## JOHN RIDGELY OF H. and HELEN S. RIDGELY, His Wife, *vs.* MAYOR AND CITY COUNCIL OF BALTIMORE.

*Statutes : constitutionality; presumption as to intention of Legislature; enactment and passage; sufficiency of title; engrossed, enrolled, and officially authenticated copy; alterations; journals; mere parol evidence, insufficient.   Eminent Domain: Constitution; Art. 29, sec. 3.   Condemnation proceedings; Ch. 117 of Acts of 1912.   Damages: for land taken; injuries to remainder.   Appraisers: appointed by Court; judicial act.   Notices by publication.*

The courts are not concerned with the wisdom, expediency or policy of a statute, or with whether it is any improvement upon former systems.                                    p. 573

By Chapter 117 of the Act of 1912, the Legislature intended to provide a new and conclusive method of procedure for the acquisition of private property for public use by condemnation, excepting in cases for the opening, closing, widening or straightening of highways.                          p. 574

Under section 3 of Article 29 of the Constitution, only the subject of an Act need be described in the title; there is no requirement that the means, instrumentalities or the procedure by which the subject of the Act is to be carried into effect shall be there described.                        p. 574

The mode and manner of the exercise of the power of eminent domain is exclusively vested in the judgment and discretion of the Legislature, subject only to the provisions of section 40 of Article 3 of the Constitution, declaring that private property may not be taken for public use, without just compensation, etc., being first paid or tendered.          p. 574

The execution of the method provided in the Act for ascertaining the compensation due an owner for property taken in the proceeding pending in Court, is a matter so closely associated with the administration of justice, that the appointment of appraisers by the Court may be said to be a judicial act. At least, it is not so far non-judicial as to render the Act of 1912 void for that reason.          p. 574

A condemnation proceeding for the acquisition of private property for public use, under the Act of 1912, is a proceeding at law, and the Act of 1912 does not change the proceeding into an equitable one.          p. 577

The judgment contemplated by the Act of 1912, as in all other condemnations of private property for public use, is not *in personam,* but is a judgment *in rem* against the property sought to be condemned.          p. 577

Property taken in condemnation proceedings under Chapter 117 of the Acts of 1912, with its provisions for personal summons and notice by publication to non-resident owners, etc., is not a taking without due process of law.          pp. 577-578

Constructive notice by publication is sufficient to support a judgment *in rem* as against non-residents, unknown persons, or persons who can not be found.          p. 578

The rule by which damages are to be considered in condemnation cases, as in all other cases, is a question of law. It is the duty of the Court to inform the jury what is the proper rule by which damages shall be measured.          p. 581

A statute which provided for an assessment of the value of the land taken will be held to include damages to the remainder of the tract as well.          p. 581

Chapter 117 of the Acts of 1912 does not attempt to establish a rule or measure by which the value of property taken

is to be estimated. That is a judicial question to be determined by the Court upon exceptions to the award; if the appraisers act upon an erroneous theory in awarding compensation, the Court has the power, and it would be its duty, to correct the error and give the correct rule to guide them in awarding damages.                              p. 582

The Legislature is always presumed to have intended that provisions in statutes should be read in the light of the Constitution.                              p. 582

Courts are not precluded by the authentication of a statute, in the manner prescribed by the Constitution, from passing upon the question as to whether the bill was constitutionally passed.                              p. 583

But an authenticated statute can not be impeached by the legislative journals alone, or by mere parol evidence.          p. 584

Under the constitutional provisions for the passage and enactment of statutes, it is not necessary for a bill to be engrossed in both houses; the uniform practice is to engross the bill only in the house in which it is presented.          pp. 585, 586

The Constitution does not require that the amendment or proposed amendments to a bill should be entered upon the journals of the Legislature.                              p. 587

Where an enrolled bill was a copy of the engrossed bill, but the engrossed bill showed that certain provisions that had been contained in it, as well as in the enrolled bill, had been stricken out, but there was no definite or satisfactory evidence to show when or by whom the change was made, it was *held,* that in such a case the evidence offered was wholly insufficient to overcome the testimony furnished by the true authentication of the Act.                              p. 589

Chapter 117 of the Acts of 1912, relating to condemnation proceedings, is a valid Act; the proceedings for condemnation under the Act are proceedings at law, and the pleadings therein should come as near as may be to the pleadings in an action at law. In proceedings under it, questions at law are

to be presented by a demurrer and questions of fact by a proper plea or "answer," representing in such plea or "answer" some one material issue or fact for the determination of the jury.                                                p. 589

*Decided January 17th, 1913.*

Appeal from the Circuit Court for Baltimore County (BURKE, C. J., and HARLAN, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*George Whitelock* and *T. Scott Offutt* (with whom was *John I. Yellott* on the brief), for the appellants.

*D. G. McIntosh* and *S. S. Field* (with *Elmer J. Cook* on the brief), for the appellees.

*Per Curiam*: This is an appeal from a judgment of the Circuit Court for Baltimore County condemning certain lands of the appellants for use by the Mayor and City Council of Baltimore in the establishment and protection of a new and larger supply of water for the city. The questions raised at the trial below related to the validity of the Act of 1912, Chapter 117, under which the proceeding was conducted, and to the necessity of the particular condemnation for the purpose proposed. The rulings upon the latter issue, as to which exceptions were reserved, consisted in the granting of a prayer defining the petitioner's rights in the premises under its charter, and in the refusal of an instruction that no legally sufficient evidence had been offered to sustain the applica-

tion. These exceptions have not been pressed on appeal, and in our opinion the rulings to which they refer were proper. The questions argued were concerned with the validity of the statute referred to, and they are fully covered by the opinion of the learned Court below, upon the principles and reasoning of which we will rest our decision and affirm the judgment. The opinion is as follows (BURKE, J.) :

The questions before the Court are presented by the issue raised upon the seventh paragraph of the amended answer, and by the demurrers filed by the petitioner to various paragraphs of the answers to the petition filed by the Mayor and City Council of Baltimore for a judgment of condemnation against the property described in the petition for the purposes mentioned.

These questions are of more than ordinary importance, and have been fully and ably argued by the respective counsel. We have carefully considered the questions, and will state the conclusions to which we have arrived and will give some reasons upon which our decision rests.

It must be admitted that under Chapter 214 of the Acts of 1908 (p. 649), the petitioner, the Mayor and City Council of Baltimore, had the power to condemn the property described in the petition for the purposes therein stated.

The real question in the case is whether the procedure for the acquisition of the property by condemnation shall be that provided by the Acts of 1908, Ch. 214 (p. 649), as amended by the Acts of 1912, Ch. 32, or by that provided by Chapter 117 of the Acts of 1912: This involves the question, which is presented by the pleadings, of the constitutionality of the last named act.

It is obvious, if that act be valid, that the procedure for the acquisition of land in the State by condemnation must be that provided therein. It was the evident intention of the Legislature to provide by the act a new and exclusive method or procedure for the acquisition of private property for public

use by condemnation. This, we think, is plain from the lan-guage of the seventh section of the act, which declares that:

> "The State, and any municipal or other corpora-tion, commission, board, body, or person, which, under the laws of this State, has the right to acquire property by condemnation, shall acquire such property, if con-demnation proceedings be resorted to, *in pursuance of and under the provision of this article, anything in any other public general law or public local law or pri-vate or special statute to the contrary notwithstand-ing;* provided, however, that nothing in this article contained shall apply to or change the present law or procedure for the opening, closing, widening or straightening of highways."

If, therefore, the act be valid, the petitioner, having the power to condemn, properly instituted its proceedings under the provisions of the Act, and the petition which is filed was in all respects sufficient under section 2 of the Act.

The land owners have assailed the validity of the Act for certain reasons, which may be grouped under the following heads:

1st. Because it violates section 3 of Article 29 of the Con-stitution, which provides "that every law shall embrace but one subject-matter, and that shall be described in its title."

2nd. Because the provisions of the Act, requiring the Court to appoint appraisers, impose a non-judicial duty upon the Court.

3rd. Because proper notice to the land owner is not pro-vided, and that under the Act an owner might be deprived of his property without due process of law.

4th. Because the Act violates Article 3, section 40, of the Constitution, in that private property may be taken under it for public use without just compensation as agreed upon between the parties, or awarded by a jury being first paid or tendered to the party entitled to such compensation.

5th. (*a*) Because the Act was not passed by the Legislature as it appears in the printed laws of 1912. (*b*) Because it was not engrossed in both houses as required by the Constitution. (*c*) Because an amendment to the bill striking out the provision relating to the appointment of appraisers was adopted by the Legislature, which amendment was omitted from the enrolled bill signed by the Governor.

It is contended that the law as passed contained the following provision: "From any final judgment of the Court an appeal may likewise be taken within thirty days thereafter, but not afterward, and the record shall be sent up to the Court of Appeals within sixty days after the entry of said appeal." Inasmuch as the enrolled copy, which was signed by the Governor and deposited with the Clerk of the Court of Appeals, omitted this provision as to the right of appeal from the final judgment, it is contended that the Act is null and void, and that the proceedings for condemnation instituted by the petitioner under it must fail.

The first four reasons assume the Act to have been constitutionally passed, and assail its validity upon the grounds assigned. The last reason urged is that the Act as signed by the Governor was never constitutionally passed.

The Court is not concerned with the wisdom, expediency or policy of the law, or whether it is any improvement upon the old system of condemnation. These are political questions, exclusively committed by the Constitution to the judgment of the Legislature.

The only questions we can decide are:

1st. Assuming the Act as signed by the Governor to have been constitutionally passed, had the Legislature power to pass it?

2nd. Was the Act as signed by the Governor constitutionally passed?

*First.*—We will now consider the objections to the Act in the order in which we have stated them. The Act relates in all its provisions solely to the procedure to be adopted and followed in all cases where the condemnation of private

property for public use is sought to be acquired, except in cases for the opening, closing, widening or straightening of highways.    It does not confer the power of condemnation; but it seeks only to regulate the exercise of that power by persons or corporations who now have, or may be hereafter invested with it.    The object of the Act and the scope of all its provisions is to do, precisely what its title, as originally drawn, declared it was intended to do, viz: to regulate the procedure for the acquisition of property for public use by condemnation, and the amendment to the title, which was wholly unnecessary, made in the Senate was not calculated to mislead any reasonable man as to the general scope of the Act.    In our opinion, the subject-matter of the Act is sufficiently described in the title to gratify the requirements of the Constitution.    It is only the subject of the Act that need be described in the title.    There is no requirement that the means, the instrumentalities, or the procedure by which the subject of the Act are to be carried into effect shall be described in the title.    *State* v. *Davis,* 7 Md. 161; *Parkinson* v. *State,* 14 Md. 184; *Baltimore City* v. *Flack,* 104 Md. 107; *Bond* v. *Baltimore,* 116 Md. 683, and other cases.

*Second.*—The mode and manner of the exercise of the power of Eminent Domain is exclusively vested in the judgment and discretion of the Legislature, subject only to the provisions of section 40 of Article 3 of the Constitution. The execution of the method provided for ascertaining the compensation to the owner for the property taken in a proceeding pending in Court is a matter so closely associated with the administration of justice that the appointment of appraisers by the Court may be said to be a judicial act.    It certainly cannot be said that it is so far non-judicial as to render the Act void for that reason.    None of the Maryland cases which deny the exercise of non-judicial powers to the Court have gone to the extent contended for in this case. The appointment is directed to be made in a pending case · after the question of the right to condemn has been deter-

mined, and the duties which the appraisers are directed to perform involve, the valuation to the owner of the land taken.

*Third.*—Sections 3 and 4 of the Act are as follows:

"3. Upon the filing of said petition, the Court, or any judge thereof, shall pass an order directing a summons to issue for the defendant to be served in the same manner as summons in actions at law, and returned by some day to be named in said order, not less than ten days nor more than twenty days from the day of the filing of said petition. If any defendant be not summoned before the return day of the summons, the summons may be re-renewed from time to time, as often as the Court, in its discretion, may think proper; or, if any defendant is non-resident or unknown or returned *non est* twice successively, the Court shall order the sheriff to set up a copy of the summons for such defendant upon the property and shall order a notice to be published once a week for four successive weeks, in a paper published in the county where such property is situated, and also in one daily newspaper published in the City of Baltimore, if the proceedings be in a county; and if the proceedings be in Baltimore City, in two daily newspapers published in said City; requiring such defendant to appear in the said Court on or before a certain day to be named in the order, said day to be not less than thirty days nor more than sixty days from the date of the first publication of said order, and show cause why said property, or such defendant's interest therein, should not be condemned as prayed in the petition."

"4. Every defendant summoned shall within fifteen days after the return day to which he is summoned, and every defendant appearing shall within fifteen days after such appearance file an answer showing cause, if any he has, why the property mentioned in the petition, or said defendant's interest therein, should not be condemned as prayed. And every defendant against whom publication has been duly made,

as hereinabove provided, shall file such an answer within the time limited in such order or publication.

"The Court shall have power for good cause shown to extend the time for answering. In default of answer within the time hereinabove provided, or any extension thereof which may have been granted by the Court, the Court shall enter judgment that said property, or the interests therein of the defendant or defendants so in default, be condemned.

"The Court shall also render the same judgment upon the filing of an answer by any defendant or defendants, if such answer does not deny the right of the petitioner to have the property condemned. In the event of an answer being filed denying the right of the petitioner to have the property condemned, the Court shall hear the question thus raised as to the right of the petitioner to condemn the property at an early date, to be specifically fixed by the Court; and in case any question of the fact is involved in the determination of that question either party shall be entitled to a jury trial, upon so electing, and either party may take testimony in open Court at such hearing in the manner usual in law cases tried before a jury or before the Court without a jury; and the same procedure shall cover as to the conduct of such hearing and reserving exceptions as in ordinary law cases."

Provision is also made for the appointment by the Court of a duly constituted guardian or committee or guardian *ad litem* to appear and defend for such defendants as may be under any legal disability.

It is also provided by section 5 that after the award of the appraisers has been returned to Court notice by advertisement shall be given

"twice a week for one week in two of the daily papers published in Baltimore City, or, where said property is situated in a county, by advertisement for one week in one paper published in said county, that such award

has been returned, and all persons having interest therein may show cause, if any they have, why the same shall not be confirmed during the ten days succeeding the filing of said award."

A condemnation proceeding for the acquisition of private property for public use has always been held to be a proceeding at law, and the Act under consideration does not change the proceeding into an equitable one. On the contrary, it recognizes its purely legal character. It provides that they shall be begun "on the law side" of the Court; that the summons for the land owners shall be served "in the same manner as summons in an action at law;" that the Court shall give "judgment" either condemning the property, or dismissing the petition; in the trial of any question of fact exceptions may be reserved "as in ordinary law cases;" the exceptions to the award of the appraisers, when heard by the Court or a jury, shall be tried and determined "in the same manner and governed by the same rules of law as to the admission of evidence and instructions to the jury. as now apply to the trial of appeals in cases growing out of the opening of highways;" the Court may send the jury to view the premises, and may strike out the verdict of the jury and grant a new trial; and the appeal allowed is from the "judgment". It would, therefore, seem that the Legislature intended to preserve the strictly legal character of the proceedings. There is certainly nothing to indicate that it was the intention to change the proceeding from an action at law to one in equity to be governed by the rules of equity, pleading and practice.

The judgment contemplated by the Act, as in all other condemnations where private property is taken for public use, is not a judgment *in personam,* but it is a judgment against the property sought to be condemned. It is strictly a judgment *in rem.* It is, therefore, difficult to understand, in the light of a provision for personal summons, and notices by publication to non-resident owners, etc., contained in the

Act and which we have quoted, how it can be said that property can be or might be taken under it without due process of law. The rule is well settled that constructive notice by publication is sufficient to support a judgment *in rem* as against non-resident, unknown persons, or persons who cannot be found. If this were not so, the Courts would be powerless in many cases to deal with the sale or partition of property of non-resident and unknown defendants, or to decree specific performance of contracts relating to real estate in which such defendants may be interested. But this is constantly done by the Courts under acts providing for such notice.

In *Pennoyer* v. *Neff*, 95 U. S. 714, in which the question of jurisdiction in cases of service by publication was considered by the Court, it was said: "Such service may also be sufficient in cases where the object of the action is to reach and dispose of property in the State, or of some interest therein, by enforcing a contract or lien respecting the same, or to partition it among different owners, or, when the public is a party, to condemn and appropriate it for a public purpose. In other words, such service may answer in all actions which are substantially proceedings *in rem*." In *Huling* v. *Kaw Valley Railroad and Improvement Company*, 130 U. S. 559, where proceedings for the condemnation of land under a statute for railroad purposes was under consideration, JUDGE MILLER, speaking of the sufficiency of notice to a non-resident by publication, said: "Of course, the statute goes upon the presumption that, since all the parties cannot be served personally with such notice, the publication which is designed to meet the eyes of everybody, is to stand for such notice. The publication itself is sufficient if it had been in the form of a personal service upon the party himself within the county. Nor have we any doubt that this form of warning owners of property to appear and defend their interest, where it is subject to demands for public use when authorized by statute, is sufficient to subject the property to the actions of the tribunals appointed by

proper authority to determine those matters. The owner of real estate, who is a non-resident of the State within which the property lies, cannot evade the duties and obligations which the law imposes upon him in regard to such property, by his absence from the State. Because he cannot be reached by some process of the Courts of the State, which, of course, have no efficacy beyond their own borders, he cannot therefore hold his property exempt from the liabilities, duties and obligations which the State has a right to impose upon such property; and, in such cases, some substituted form of notice has always been held to be a sufficient warning to the owner, of the proceedings which are being taken under the authority of the State to subject his property to those demands and obligations."

This doctrine was announced and applied in a suit for the specific performance of a contract in *Hollander* v. *Central Metal Company*, 109 Md. 131. When the provisions of the act are examined in the light of the principles announced in these cases, we think they provide reasonable and sufficient notice to every one interested in the property, and a full opportunity to be heard both upon the question of the right to condemn and the amount of the award of the appraisers.

*Fourth.*—The contention that the act violates section 40, Article 3 of the Constitution, is based upon the provisions of the act relating to the award to be made by the appraisers. Unless the condemning party and the land owner can agree, the property can only be taken after an award by a jury of just compensation and payment, or tender of the compensation so awarded by the jury.

The method provided by the Act for ascertaining compensation is as follows:

"The lower Court shall appoint as appraisers three inhabitants of the city or county where such property is situated, not in any wise interested in the property to be condemned, nor related to the owner or owners thereof, each of whom shall, before acting, make oath before the clerk of said Court, or before any officer

duly authorized to take affidavits, that he will justly, impartially value the property described in the aforesaid petition, and the interests of the several owners thereof, and as soon as conveniently may be the said appraisers shall assess the value of the property or the interest or estate therein sought to be condemned, and apportion the same among the various owners thereof, according to the values of their respective interests, and return to said Court their award of the value of the said property and of the respective interests of the several owners thereof under their hands and seals * * * The said award shall lie in the Court ten days, subject to exception, and either the petitioner or any of the defendants or any owner or reputed owner of any interest in the property sought to be condemned, whether he shall have previously appeared to said petition, or shall have been made a party thereto or not, shall have the right to file exceptions to said award; upon such exceptions being filed the Court shall, as soon thereafter as conveniently may be, have the same heard, tried and determined in Court before a jury, unless the jury trial is waived, or by the Court if a jury trial is waived, in the same manner and governed by the same rules of law as to the admission of evidence and instructions to the jury as now apply to the trial of appeals in cases growing out of opening of highways. Upon the request of any party or any juror the Court shall send the jury to view the premises in the same manner as is now done in actions at law by consent. The Court shall have the same power as in ordinary cases at law to strike out the verdict of the jury and grant a new trial."

It is insisted that under these provisions the damages are restricted to the value of the particular property described in the petition, and that where a part only of the owner's property is taken and the appropriation of that part injures the remaining land, no compensation for the resulting injury can be awarded under the Act. If this were true, an award made

upon such a principle of valuation would not constitute "just compensation" within the meaning of the Constitution.

The rule by which damages are to be measured in condemnation cases, as in all other cases, is a question of law. It is the duty of the Court to inform the jury what is the proper rule by which the damages shall be measured. It was said in *Tide Water Canal Company* v. *Archer,* 9 G. & J. 484, that: "In interpreting statutes which confer powers that are to be applied to a great public object, depending for its successful results upon the decision of character and maturity of judgment in the officers and others entrusted with its execution, and in whom, from the very nature of the case, there must necessarily be vested large powers, resting much of their exercise in discretion, and that discretion undefined, our construction ought to be benign and liberal—whilst on the one hand we should regard these statutes as remedial acts, intended to carry into execution that most important and equitable provision in favor of private right, that wherever public necessity demands that the property of an individual should be appropriated to public uses, he shall receive a just and reasonable compensation therefor, and give to the expressions of the lawgiver the sense most suitable to the subject and best adapted to ensure to such individual the most liberal compensation for the damages he may sustain, we are, on the other hand, so to construe them as not only not to embarrass or defeat their purposes, but as far as we properly can, to facilitate and promote the success of a great and generous scheme of public policy." It is stated by *Lewis on Eminent Domain,* section 473, page 610, that: "Statutes will always be given such a construction as will make them constitutional and valid where that is possible. Hence a statute which provides for an assessment of the *value of the land taken* will be held to include damages to the remainder as well."

The Act nowhere attempts to establish a rule or measure by which the value of the property is to be arrived at. That is

a judicial question to be determined by the Court upon exceptions to the award. If the appraisers act upon an erroneous theory in awarding compensation, the Court has full power and it would be its duty to correct the error, and to give the correct rule to guide them in awarding damages. The counsel for the land owners, we think, have placed a too narrow and restricted meaning upon the provision of the act relating to compensation. Those provisions should be read in the light of the Constitution, as the Legislature is presumed to have intended they should be read, and when all the provisions of the act relating to the award are considered, we can see no reason for holding that the owner, under their operation, could be deprived of his property without "just compensation."

The provisions made for a trial by a jury of the question of the adequacy of the award made by the appraisers are sufficient to gratify the requirements of the Constitution. *Steuart* v. *Baltimore,* 7 Md. 500; *Baltimore* v. *Clunet,* 23 Md. 449; *Wannenwetsch* v. *Baltimore,* 111 Md. 39, and cases therein cited.

It seems to us that the importance and influence of the appraisers' award have been very much magnified by the land owners. If they award "just compension," as it is their duty to do and as it must be presumed they will do, the proceedings may be greatly facilitated; but if the land owner is dissatisfied, their award may be passed upon by a jury under the guidance and instruction of the Court. In this trial, we do not think the action of the appraisers would have any prejudicial influence with a jury. It would certainly not be so great as the verdict of the jury under the old system. The fact that the appraisers have no power to summon and examine witnesses under oath may be a defect in the law, which may be remedied hereafter, but that is not a defect which affects the validity of the act.

It is intended that the appraisers shall be a competent, disinterested, and sworn body, and there is no reason why such

a body should not be able to award just compensation to the
owner for the property taken.  It should be as competent to
do this as the sheriff's jury under the old system, inaugurated
and attended as it was in many cases by so many evil in-
fluences, which this Act was intended to avoid.

*Fifth.*—There remains for consideration the contention
that the law was·not constitutionally passed for the reason
above stated.   The Constitution, Article 3, section 30, de-
clares: "Every bill, when passed by the General Assembly,
shall be sealed with the great seal, shall be presented to the
Governor, who, if he approves it, shall sign the same in the
presence of the presiding officers and chief clerks of the
Senate and House of Delegates.   Every law shall be recorded
in the office of the clerk of the Court of Appeals, and in due
time be printed, published and certified under the great seal,
to the several Courts, in the same manner as has been hereto-
fore usual in this State."

There is great diversity of opinion in the American Courts
as to the power of the Court to strike down an act after it
has been authenticated in the manner prescribed by the Con-
stitution upon the ground that it was not constitutionally
passed.   Many of the Courts hold (and this seems to be the
trend of modern authorities), that the authentication of the
act conformably to the Constitution is conclusive and unim-
peachable evidence that the Statute was legally passed.   Other
Courts hold that the Court has power to go behind the authen-
tication and inquire whether the act was passed conformably
to the mandates of the Constitution.   The Maryland Courts
have taken the position that they are not precluded by the
authentication, and the cases in which the question has been
considered have turned upon the *competency* and *sufficiency*
of the evidence adduced to rebut the presumption arising
from the proper authentication of the bill that it was consti-
tutionally passed.   In the recent case of *Fidelity Warehouse
Company* v. *The Canton Lumber Company,* 118 Md. 135,
will be found a statement as to what matters the Court will

inquire into when a question of this kind is presented. In the case of the *Atchinson T. & S. F. Ry. Company* v. *The State,* decided by the Supreme Court of Oklahoma, January 24th, 1911, and reported in 113 Pacific Reporter, 921, will be found a very full and interesting discussion of the whole question in different Courts of the United States, with a collection of cases *pro* and *con* upon the subject. The Maryland rule upon the subject is thus stated in *Berry* v. *Drum Point Railroad Company,* 41 Md. 463: "Unquestionably, where an Act has been duly authenticated and published as law by authority, the presumption is, that all the constitutional solemnities and prerequisites necessary to its valid enactment have been complied with; and this presumption exists until the contrary is *clearly* made to appear. But when it can be made *clearly* to appear, as in this case it has been, that the particular bill or a section of a bill, although it may have all the forms of authentication, has never in fact received the legislative assent, we think the Court is bound to look not only behind the printed statute book, but beyond the form of the authentication of the bill as recorded in the office of this Court, and if the evidence is *clear and entirely satisfactory to the mind of the Court,* to decide accordingly." After referring to a number of authorities to support this proposition, the Court continues: "But while the authorities thus cited maintain that it is the right and duty of the Court to go behind the authentication of the statute, and to receive evidence, such as that furnished by the engrossed bill, with the endorsements thereon, and the journal of proceedings of the two Houses of the Legislature, upon the questions of the constitutional enactment of what purports to be a statute, they all seem to concur in maintaining that no statute, having the proper form of authentication, can be impeached or questioned upon mere parol evidence. Nor do we decide in this case, that the journals of the two Houses, though required by the Constitution to be kept as records of their proceedings, would be evidence *per se* upon which the validity

of the statute, having the required authentication, could be successfully questioned as to the manner of its enactment."

It would seem to be definitely settled in this State that an authenticated statute cannot be impeached by the Legislature journals alone, or by mere parol evidence. *Fouke* v. *Fleming,* 13 Md. 413-414. The latter part of the quotation from JUDGE ALVEY's opinion in *Berry's Case* evidently had reference to *Fouke's Case* in 13 Md. 401. In that case it was contended that the journals of the Senate and House showed that certain provisions contained in the printed statute "were stricken out of the Act, as originally prepared and reported, and that, in fact, they are no part of the law as it was enacted by the two branches of the Legislature, and that in lieu of the dispensative provisions, as they now stand in the printed copy of the law, provisions were adopted, expressly requiring the affidavit to be made to all mortgages of personal property and bills of sale. See *Senate Journal* of 1856, pages 233 and 234, and *House Journal,* pages 497, 498. It is apparent then that Ch. 154 [Acts of 1856], as it has been printed and published, only dispenses with the affidavit, because of the misprision or carelessness of the engrossing clerk, or the blunders of the printer, and not because the Legislature intended this to be so, but directly to the contrary." In passing upon this contention the Court said: "Seeing that the engrossed bill and the published copy of the law correspond, we do not feel authorized to assume they are erroneous, and decide the law to be according to the evidence of the proceedings of the Legislature, as furnished by the journals of the two houses."

In the case before us the Journal of the House is silent as to any amendment striking out the provision as to appraisers, and the mere parol evidence upon that subject, admitted subject to exception, that such an amendment was adopted was clearly inadmissible, and will be stricken out.

As to the objection that the bill was not engrossed in both houses, we will merely say that the Constitution does not seem to require this, and it never has been the practice to

do so.   The uniform practice has been to engross the bill only in the house in which it originated, and this has been the accepted legislative construction of this provision of the Constitution.   In the *Fidelity Warehouse Company* v. *The Canton Lumber Company, Supra,* in which the mechanic's lien law was attacked upon the ground that it was not passed conformably with the Constitution, the Act was sustained, although it was engrossed in one house only.

The most important question in this branch of the case arises upon the objection that the provision, quoted above, giving the right of appeal from the *final judgment* was contained in the will as *actually passed, but was omitted* from the enrolled copy which was signed by the Governor, deposited with the clerk of the Court of Appeals, and printed as one of the statutes of the State.

This contention, under the rules prevailing in this State, presents a question of fact, and involves an inquiry into the competency and sufficiency of the evidence offered to support it.

The original bill as introduced in the Senate, the engrossed copy, the enrolled bill as authenticated, the journals of the two houses, and the printed copy of the Act have been offered in evidence.

It appears from the examination of this documentary evidence that all the constitutional requirements were observed in the passage of the Act.   As we have before stated that the oral evidence introduced to show an amendment of the bill in the House, by which the provisions as to appraisers was stricken out is inadmissible, and further that the engrossment was constitutionally sufficient, these objections will not be further considered.

It is also shown that the enrolled copy and engrossed copy correspond.   But it is insisted that the provision as to the right of appeal from the *final judgment* constituted a part of the bill as it was actually passed, and, therefore, the enrolled copy, which omits this provision, was not the Act which was passed by the Legislature.   But what is the

nature and character of the evidence offered to support this claim?

It is not denied, and it could not be, that this provision was a part of the bill as it passed the Senate, but the engrossed bill shows that it was stricken out. When and by whom it was stricken out is left by the evidence offered by the land owners in great doubt and uncertainty. Whatever amendments were made by the bill in the House were concurred in by the Senate. The presumption is that this provision was properly stricken out, and that it passed the Legislature in the form shown by the enrolled and engrossed bills. This is a strong presumption, and can only be rebutted by clear and satisfactory evidence competent in law for that purpose. There is nothing in the journal to show that the bill passed with the provision incorporated in it. The Journal speaks neither one way nor the other upon the subject. The Constitution requires the Journal to contain certain definite things, but it does not require amendments, or proposed amendments to be entered upon the Journal. Whatever the Journal contains over and above those things required by the Constitution to be shown therein, are entered in obedience to the direction of each house.

The argument is that since the Journal and engrossed bill show that two amendments only were adopted by the House, that therefore, this provision was contained in the bill as passed. But this argument is evidently fallacious. Such a conclusion is not warranted by the premises. The evidence of the fact stated is certainly insufficient under the Maryland rule to impeach the authenticated bill.

If we were permitted to speculate upon the question we should be disposed to say that the whole erasure in the engrossed bill from the word "appeal" in line 2 and including the word "review" in line 7 was done in the Judiciary Committee of the House after the amendments were made and before the bill was reported and passed. The engrossed bill discloses inherent evidence that this was done, and if it were mistakenly done and the bill passed in the form in

which it was authenticated, the Court has no power to correct the mistake.

The Journal shows that the clause following the word "appeal" in the fifth line of the engrossed bill and ending with the word "review" in the seventh line was stricken out by an amendment proposed by the House committee.

It also shows another amendment proposed and adopted by the House in regard to counsel fee. This amendment was to be inserted at the end of line 13 of the engrossed bill. The engrossed bill shows that the amendments supposed to have been adopted by the committee were indicated by lead pencil marks on the bill, the first one embracing the provision in controversy following the word "appeal" in the second line and ending with "review" in line seven. The second amendment was also indicated in lead pencil at the end of line 13. Afterwards lines of red ink were run through the indicated amendments, presumably by the committee's clerk. If the striking out of the provision be a mistake, there is strong reason to believe that it occurred in the way suggested when the bill was reported to the House and passed.

Counsel for the land owners upon this branch of the case have placed great reliance upon *Berry's Case, Supra,* but a very different state of facts was presented in that case. There the engrossed bill showed that the Act as passed extended the charter of the company until the 1st of January, 1880; while the enrolled copy which was signed required the road to be finished in five years from January 1st, 1870. This was clearly established beyond all controversy by an inspection and comparison of the engrossed bill with the enrolled copy. From such comparison it was manifest that the third section of the bill never received the legislative assent. In commenting upon this, JUDGE ALVEY said: "How this change or alteration occurred can only be a matter of conjecture. We may readily suppose that if the engrossed bill, as it was finally acted upon by the two houses of the Legislature, had been sealed and submitted to

the Governor for his signature, instead of being entrusted to some careless or inexpert clerk to be copied for such authentication and approval, the alteration or omission would hardly have occurred."

In this case the enrolled bill is a copy of the engrossed bill, the engrossed bill, however, showing that the provision as to the right of appeal from the final judgment had been stricken out, but how and when or by whom is not shown by any definite or satisfactory evidence. Without further prolonging this opinion, we will say that the evidence offered is, in our judgment, wholly insufficient to overcome the evidence furnished by the due authentication of the Act.

It follows that Chapter 117 of the Acts of 1912, approved April 8th, 1912, is a valid law; that the proceeding for condemnation under that Act is a proceeding at law, and that the pleading therein should conform as near as may be to the pleadings in an action at law; that questions of law should be presented by a demurrer and questions of fact by a proper plea, or "answer," as it is called in the Act, presenting in such a plea, or "answer," some one material issue of fact for the determination of the jury; that the demurrers entered by the city should be sustained, and that judgment for the petitioner, the Mayor and City Council of Baltimore, will be entered in its favor, upon the issue raised upon the seventh paragraph of the amended answer.

Leave will be granted to the defendants to file within a limited time, such further plea, or answer as they may be advised is proper to raise any question of fact proper to be submitted to the jury under the Act in accordance with the views herein expressed."

*Judgment affirmed, with costs and cause remanded.*