JOSEPH R. FOARD CO. OF BALTIMORE CITY et al. v. STATE OF MARYLAND to Use of GORALSKI et al.

(Circuit Court of Appeals, Fourth Circuit. November 5, 1914.)

Nos. 1272–1275.

1. MASTER AND SERVANT ⬳301—LIABILITY FOR NEGLIGENCE OF SERVANT—SUBSIDIARY CORPORATION.

Where a ship brokerage company organized and completely controlled a stevedoring company, whose officers were its own officers, furnished its office, kept its accounts, and handled all its funds, paid its losses, and kept its profits as a charge for managing its business, the two companies were identical as to third persons, and both were liable for damages caused by the negligence of an employé of the stevedoring company in conducting its business

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1210–1216; Dec. Dig. ⬳301.]

2. EXPLOSIVES ⬳8 — INJURIES FROM ACCIDENTAL EXPLOSION — ACTION FOR DAMAGES.

A finding by the trial court that an explosion of dynamite while being loaded on a ship was caused by the striking of one of the boxes with a bale hook by a foreman of stevedores in attempting to force the box into place *held* sustained by the evidence.

[Ed. Note.—For other cases, see Explosives, Cent. Dig. §§ 4, 5; Dec. Dig. ⬳8.]

3. MASTER AND SERVANT ⬳315—INJURY TO THIRD PERSON—EXPLOSION OF DYNAMITE—LIABILITY OF CARRIER—NEGLIGENCE OF INDEPENDENT CONTRACTOR.

Loading, dynamite, gasoline, gunpowder, naphtha, and other inflammable or explosive substances for transportation is necessary to commerce and is not a nuisance; and since dynamite may be loaded with safety, if adequate care be taken in the details of the work, to guard against concussion and heat, a carrier by sea, which contracts with a stevedoring company of good standing and reputation for carefulness to do such loading, is not liable for damages caused by an explosion, due to the negligence of an employé of the contractor.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1241, 1244–1253, 1255, 1256; Dec. Dig. ⬳315.]

4. MUNICIPAL CORPORATIONS ⬳745½ — LIABILITY FOR TORTS — RESPONSIBILITY FOR ACTS OF OFFICERS.

Actionable negligence cannot be imputed to a city for mistake of judgment, or even negligence, of its officers in performing the governmental function of selecting a place for the loading of explosives, from which it derives no profit.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1568, 1569; Dec. Dig. ⬳745½.

Liability for torts of public officers, see note to Mayor, etc., of City of New York v. Workmen, 14 C. C. A. 534.]

5. STATUTES ⬳107—VALIDITY OF ENACTMENT—SUBJECT AND TITLE OF ACT.

Act Md. 1912, c. 32, amending Code Pub. Loc. Laws Md. art. 4, § 6, relating to Baltimore city, and especially restricting the liability of the city

---

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

for the exercise of the powers over the Patapsco river conferred by Acts Md. 1908, c. 148, *held* not invalid, as embracing more than one subject, under Const. Md. art. 3, § 29, providing that every law enacted "shall embrace but one subject and that shall be described in its title"; the one subject of such act being the charter powers and obligations of the city.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 121–134; Dec. Dig. ☞107.]

6. COURTS ☞366 — FEDERAL COURTS — AUTHORITY OF STATE DECISIONS — VALIDITY OF STATE STATUTES.
A federal court should be reluctant to adjudge a state statute to be in conflict with the state Constitution before it has been passed on by the state courts, especially when the highest court of the state has rendered a decision on the assumption of its validity, although the direct question was not presented or decided.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–957, 960–968; Dec. Dig. ☞366.]

7. MUNICIPAL CORPORATIONS ☞57—STATUTORY LIMITATION OF LIABILITY.
The general rule is that the state, in conferring powers and imposing obligations on municipalities, may limit both the powers and the obligations as it sees fit.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 144, 148; Dec. Dig. ☞57.]

Appeals from the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Suits in admiralty by the State of Maryland, to the use of Frances Goralski, widow, Mary Goralski, infant, Joseph Gielner, and Andrew Gielner, against the General Stevedoring Company, the Joseph R. Foard Company of Baltimore City, the Mayor and City Council of Baltimore City, and the Munson Steamship Line, and by Gustave Lies against the same respondents and the Maryland Steel Company, with 16 other cases. Decrees for libelants against the General Stevedoring Company and the Foard Company, and for the other respondents, and numerous parties appeal. Affirmed.

For opinion below, see 213 Fed. 51.

George Forbes, Joseph C. France, and W. Irvine Cross, all of Baltimore, Md., for Joseph R. Foard Co. of Baltimore City and General Stevedoring Co.

Charles Markell, of Baltimore, Md. (Gans & Haman, W. Calvin Chesnut, and Daniel H. Hayne, all of Baltimore, Md., on the briefs), for Maryland Steel Co.

J. Morfit Mullen, of Baltimore, Md. (George Dobbin Penniman, of Baltimore, Md., on the briefs), for Samuel Carter et al.

Thomas F. Cadwalader, of Baltimore, Md. (H. N. Abercrombie, of Baltimore, Md., on the briefs), for stevedores.

Samuel B. Plotkin, of Baltimore, Md., for Charles Davies.

Charles R. Hickox, of New York City (Convers & Kirlin, of New York City, on the briefs), for Alum Chine Steamship Co.

S. S. Field and Alexander Preston, both of Baltimore, Md., for Mayor and City Council of Baltimore.

Charles S. Haight, of New York City (John W. Griffin and Haight,

Sandford & Smith, all of New York City, on the briefs), for Munson Steamship Line.

Alexander Preston, of Baltimore, Md., for Maryland Steel Co. in Case No. 1275.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. On the morning of March 7, 1913, a large quantity of dynamite exploded on the British steamship Alum Chine lying in the quarantine anchorage of the port of Baltimore on the Patapsco river. The ship was destroyed, more than 30 men were killed and a number injured, and other ships in the vicinity were damaged. The first indication of the disaster was a slight explosion or puff in or near a box of dynamite which Bomhardt, a stevedore foreman, was trying to force into position in a tier of boxes. The District Court heard together the 25 libels filed, and held in an elaborate and strong opinion that the explosion was due entirely to the negligence of the stevedore foreman in loading the dynamite, and not to fire originating in the coal from careless handling or other negligence on the part of the ship crew, and adjudged damages in favor of those who had suffered injury against Joseph R. Foard Company and the General Stevedoring Company as the independent contractors liable for the negligence of the foreman, their employé.

[1] 1. The District Court was clearly right in holding untenable the position taken by the Foard Company that the loading was done by the General Stevedoring Company as independent contractor and that it alone was responsible for any negligence in handling the dynamite. Whatever may have been the original design when the Foard Company caused to be organized the General Stevedoring Company, the evidence leaves no doubt that the stevedoring, whether done under one or the other corporate names, was in reality but a department of the business of the Foard Company as shipbrokers and agents. The two companies had the same officers; the Stevedoring Company handled no funds, except through the Foard Company; its losses were paid by the Foard Company and dealt with as if they were that company's own losses. All of the profits of the Stevedoring Company were kept by the Foard Company as a charge for managing the business. There are other like circumstances, but these are sufficient to show that the Stevedoring Company was organized and controlled and its affairs so conducted as to make it a mere instrumentality of the Foard Company. This being so, the two corporations must be regarded, as to the outside public, identical. Interstate Telegraph Co. v. Baltimore, etc., Co. (C. C.) 51 Fed. 49; Baltimore & O. Telegraph Co. v. Interstate Telegraph Co., 54 Fed. 50, 4 C. C. A. 184; In re Watertown Co., 169 Fed. 252, 94 C. C. A. 528; Chicago, etc., Co. v. Myers, 168 Ill. 139, 48 N. E. 66.

But, even if the usual current of business of the two corporations had been separate, in this instance the contract to load the vessel was with the Foard Company, and the evidence tends to show that it made no separate contract with the Stevedoring Company, but co-operated with and completely controlled it. The two companies, therefore, will

be treated as one in this discussion, to be referred to as the Foard Company.

[2] 2. The next issue in sequence is whether the dynamite was exploded by the negligent act of Bomhardt, a stevedore foreman, in striking with a bale hook, or otherwise handling with violence, a box containing dynamite, or by a fire originating in the ship from spontaneous combustion, due to the negligent storing of coal, or from other negligence in the management of the ship. If the former was the cause, the Foard Company is liable; if the latter, then the Foard Company is free from liability, since it is not charged that it had control of anything on the ship except the dynamite.

There was some evidence to the effect that the dynamite was not brought on the ship in the safest way; that the men employed were only the ordinary stevedores, when safety required men specially selected and trained; and that they wore leather shoes, with tacks, instead of the safer rubber shoes. But all this, if true, is not material, for there is no evidence whatever that anything done or omitted by the Foard Company had any connection with the explosion, except the use of a bale hook and the violent handling of a box of dynamite by Bomhardt. The dynamite was stored tier on tier in a specially prepared framework placed in the hold of the ship on a level surface of coal. It was necessary to fit the boxes closely, so as to guard against the danger in transportation of explosion by concussion. The loading of the entire cargo of 300 tons had been almost completed.

That the first explosion was at or in a box of dynamite when Bomhardt was trying to force it into its place between two other boxes is proved by the testimony of all the witnesses who had opportunity to observe, including Bomhardt himself. The only variance is as to whether the explosion immediately followed a violent blow on the box with a bale hook, or came after Bomhardt had discarded the bale hook and was trying to force the box in by "marrying"—that is, by placing two boxes in the shape of an A and forcing them down by pressing hard on the apex.

The District Judge has found the overwhelming preponderance with the large number of witnesses who testified that the explosion was coincident with a violent blow with the bale hook, and against Bomhardt and the one other witness who testified that Bomhardt did not have a bale hook when the explosion occurred. No further statement of the facts is necessary to show that this conclusion has not only reasonable, but very strong, support in the evidence, and cannot be disturbed.

There is as little doubt that any violent handling of dynamite or other act producing considerable concussion or friction is dangerous, and, except when required by necessity, negligent. It may be true, as contended, that a bale hook might be used so gently as to be a safe implement; but, since dynamite is known to explode from concussion, it is perfectly plain that the violent striking of a box containing such a destructive explosive with an instrument as heavy and inflexible as a bale hook would tend to prove negligence. Even if the danger of explosion be slight, such an act would still be evidence

of negligence, for due care is care proportionate to the consequences to be apprehended. The evidence shows that the danger of the use of such implements in handling dynamite is generally recognized, and that the Foard Company made some effort to prevent its men from using them.

It is contended, nevertheless, on the part of the Foard Company, that neither the first nor the final explosion could have resulted from handling or striking the box of dynamite, and that both explosions were due to a fire on the ship originating in some other way. In support of this position it is insisted: (1) That according to scientific opinion the dynamite, being frozen, could not have been exploded by a blow which did not drive the point of the hook through the box to the dynamite, and that it was demonstrated that the point of the hook could not have gone through the box; (2) that, if the fire had originated from a slight explosion of a small quantity of the dynamite, it is scientifically certain that the explosion of the mass would have followed immediately, and not, as it did, after the lapse of 10 or 12 minutes; (3) that these scientific inferences are supported by the testimony of witnesses who saw smoke coming from a different part of the ship after the first explosion.

At the time of the explosion the temperature was 21 degrees Fahrenheit, while the freezing point of dynamite is 52 degrees Fahrenheit. In transportation there had been considerable variation in temperature. Inclosed as it was in paper and packed in close wooden boxes, the more exposed surfaces would probably be frozen, while the protected interior would not. That some of the dynamite was less sensitive, due to freezing or other cause, is indicated by the fact that a considerable quantity was found intact after the explosion. On this the two expert witnesses agree. They also agree in saying that dynamite which has been frozen and partly thawed is peculiarly liable to explode, and that its action is erratic. On this point Dr. Munroe, the expert called by the Foard Company, testified:

"The occasion for that greater sensitiveness of this frozen dynamite which is being thawed lies in the fact of the exudation of the nitroglycerine from the material, so that we have a film with the liquid nitroglycerine upon the surface of the stick, and that liquid nitroglycerine is more sensitive to heat and shock than the compound mixture is."

Referring to the testimony of some of the witnesses that the explosion broke open the box and sent two nails into the face of one of the men, Dr. Munroe said:

"It is possible for a small portion of the dynamite to have been exploded; and, if the material was frozen, or partly frozen, to set material on fire; but to have been of sufficient amount to have thrown the nails about, so as to imbed them in the person of a man, without producing more profound effect, seems to me almost impossible."

Then follows this question and answer, on which the Foard Company mainly relies to disprove the explosion from the stroke of the bale hook:

"Q. Suppose there was an explosion which was sufficient—leaving out the nail question for the moment—sufficient to knock three men down who are

near the box, state whether it is conceivable that the explosion could come from dynamite in that box without affecting the other dynamite in the box. A. In my opinion it would be most improbable."

The witness then expresses the opinion that under the conditions described spontaneous combustion in the coal might have been the cause of the fire and the explosion. The only support in fact that this theory has is the testimony of a number of persons on other vessels that after the first explosion they saw smoke rising from the forecastle, and not from the hatches where the explosion occurred. Considering the volatile nature of smoke, its liability to drift with air currents on the ship, and the distance of the observers from the ship, an inference that the fire originated from the coal would be nothing more than plausible conjecture. It cannot be accepted against the positive and undisputed testimony of many persons on the scene, who saw no fire or smoke, and felt no heat, and who testified that an explosion followed instantly on the violent handling of the dynamite by Bomhardt.

Nor is it possible, in view of this testimony, to draw the inference that the explosion could not have been produced by the blow on the box, and is therefore an unexplained accident, for which no one can be held liable. It is vigorously argued against the District Judge's finding of the act of Bombardt as the proximate cause of the accident that it is opposed to this reasoning by him:

"Theoretically the chances of it so happening would be so small as to be difficult of expression in mathematical terms. Nevertheless, there was an explosion. No reasoning can alter that fact, however strongly it may compel us to look elsewhere for the cause."

This, taken with other portions of the opinion, meant nothing more than that from the standpoint of the expert the chances of such an accident—a blow, a slight explosion produced by the blow breaking open the box, an interval of 10 or 12 minutes, followed by a general explosion, without exploding all the dynamite—would have been regarded, reasoning deductively, almost infinitesimal; but the court must accept the positive and undisputed evidence of many witnesses that it did so occur. The preponderance of the evidence leaves no escape from the conclusion that the proximate cause of the explosion was the violent handling of the dynamite and the use of a bale hook.

[3] 3. Passing from the contest between the Foard Company and the Munson Steamship Company, the next error assigned is the refusal of the District Court to hold the Munson Steamship Line, charterer of the Alum Chine, liable along with the Foard Company to those who suffered damages. There is no dispute that the Foard Company was an independent contractor. Imbrovek v. Hamburg-American S. P. Co. (D. C.) 190 Fed. 229; Atlantic Transport Co. v. Imbrovek, 193 Fed. 1019, 113 C. C. A. 398.

It is insisted, however, that the Munson Company cannot avail itself of the rule that the independent contractor alone is liable for damage caused by his negligence: (1) Because by due inquiry it would have ascertained that the Foard Company was not a stevedore company, efficient in the careful loading of dynamite; and (2) because the work was inherently dangerous.

4. It is true that the Munson Company would be liable if it had failed to exercise reasonable care to select a competent contractor. 26 Cyc. 1265. But due care on this point does not require inquiry into all the details of the contractor's methods. Contracts to load vessels are given to stevedores, because they are better qualified than the ship company to ascertain the best methods and carry them out safely. It would be hardly possible to find a stevedore with a higher reputation for promptness and safety than the Foard Company. It was the leader of the business in Baltimore, and had loaded dynamite and other explosives for many years without serious accident. It is clear that the finding of due diligence by the District Court in this respect is well sustained.

5. It is not easy to state definitely the limitation of the doctrine that an independent contractor alone is liable for his own negligence which will square with reason or with the numerous authorities on the subject. Manifestly one who contracts for another to erect a nuisance, or to trespass on his neighbor, or to violate a statute, or do any other wrong, cannot escape liability for injury caused by the wrong. This has been held from the earliest cases to Weinman v. De Palma, 232 U. S. 571, 34 Sup. Ct. 370, 58 L. Ed. 733.

We shall not attempt the fruitless task of analyzing and attempting to reconcile the numerous cases passing on the general proposition, so difficult of application, that liability cannot be escaped by employing an independent contractor, where the work is inherently dangerous, unless proper precautions are taken. They have been elaborately discussed in the briefs, and most of them are collated and commented on in notes in 65 L. R. A. 833, 76 Am. St. Rep. 382, and 26 Cyc. 1559. Reason and consideration of the practical results of the various decisions seem to justify this statement as to work inherently dangerous.

The rule that responsibility is on the independent contractor alone does not apply when at the inception of the undertaking a man of ordinary reason should know that in the natural course of things the work would certainly or probably result in injury to another, unless some distinct and definite precautions be taken, although the details of the work be done with due care; as, for example, guarding a hole dug in the street, or protecting buildings close to blasting operations from rocks which would probably strike them, or protecting a wall when excavating by it. But the exception does not extend to work which could be surely performed with safety upon the sole condition that due care be exercised in the details of its execution.

Applying this rule, the Munson Company is not liable. Loading dynamite, gasoline, gunpowder, naphtha, and other inflammable or explosive substances is necessary to commerce and is not a nuisance. The Ingrid (D. C.) 195 Fed. 596, and authorities cited; Ingrid v. Central Railroad Co. (2d Circuit) 216 Fed. 72, 132 C. C. A. 316. There was no distinct and definite precaution to be taken, so as to make sure that due care in the details of the work would make it safe. It was not disputed that dynamite may be loaded with perfect safety, if adequate care be taken against concussion and heat. There was no danger

219 F.—53

of either, except from the details of the work, and therefore the independent contractor alone was liable.

[4] 6. Assertion of liability of the city of Baltimore is made on the ground that it was negligent in designating the place where the accident occurred for the transhipment of dynamite, in that it was a place frequented by other vessels, and that it was negligent in not properly supervising the loading of dynamite where an explosion would probably result in loss of life and property. This position is untenable. The general rule is that actionable negligence cannot be imputed to a city for mistake of judgment, or even negligence, of its officers in performing the governmental function of selecting a place for the loading of explosives from which it derives no profit. Boehm v. Baltimore, 61 Md. 265; Lane v. City of Concord, 70 N. H. 485, 49 Atl. 687, 85 Am. St. Rep. 643; Hagerstown v. Klotz, 93 Md. 437, 49 Atl. 836, 54 L. R. A. 940, 86 Am. St. Rep. 437; Note, Van Cleef v. Chicago, 23 L. R. A. (N. S.) 636; Rogers v. City of Binghampton, 186 N. Y. 595, 79 N. E. 1115; City of Mansfield v. Bristor, 76 Ohio St. 270, 81 N. E. 631, 10 L. R. A. (N. S.) 806, 118 Am. St. Rep. 852, 10 Ann. Cas. 767; Salmon v. Kansas City, 241 Mo. 14, 145 S. W. 16.

[5] This court held in State of Maryland v. Miller, 194 Fed. 775, 114 C. C. A. 495, that the statute law of Maryland made the city of Baltimore liable for the damages to a vessel caused by sinking piles and cutting them off just below the water surface in the Patapsco river by one to whom the city had given a permit to drive the piles. The Patapsco river is beyond the corporate limits of the city, but the court held that the statute which gave the city power to provide for the preservation of navigation of the Patapsco river imposed the obligation to see that obstructions which had been placed there with its consent or with its knowledge or opportunity for knowledge should be made safe. After this decision the General Assembly of Maryland in 1912 enacted a statute containing this provision:

"Provided, however, that, except in regard to docks and wharves owned by the mayor and city council of Baltimore, nothing contained in any section or provision of this article shall be construed to impose any duty upon the mayor and city council of Baltimore to any person or corporation using the Patapsco river, or any branch or tributary thereof, in regard to the safety thereof, or to render the said mayor and city council of Baltimore liable for any loss of life or injury or damage to person or property, by reason of any obstruction in, or unsafe condition of, any part of said river or of said branches or tributaries, or either of them."

A municipality is not liable for things done or omitted outside of its limits, unless the liability be imposed by statute; and the act of 1912 in terms removed the liability imposed by the act of 1908, under which State of Maryland v. Miller was decided. We are unable to agree with the District Court that this act was invalid under the Constitution of Maryland, which provides that "any law enacted by the General Assembly shall embrace but one subject and that shall be described in its title." It is true that the title of the act refers to some sections of the charter of the city of Baltimore and some of the Code of Public Laws of Maryland under the title "City of Baltimore." But the one sub-

ject is the charter powers and obligations of the city of Baltimore. Worcester v. School Com'rs, 113 Md. 305, 77 Atl. 605.

[6] The validity of this act of 1912 is recognized by the Supreme Court of Maryland in Ridgely v. Mayor, etc., of Baltimore, 119 Md. 571, 87 Atl. 909. A federal court should be reluctant to adjudge a state statute to be in conflict with the state Constitution before it has been passed on by the state courts, especially when the highest court of the state has rendered a decision on the assumption of its validity although the direct question was not presented or decided. Michigan Cent. R. R. v. Powers, 201 U. S. 245, 26 Sup. Ct. 459, 50 L. Ed. 744; L. & N. R. R. v. Garrett, 231 U. S. 305, 34 Sup. Ct. 48, 58 L. Ed. 229.

[7] The general rule is that the state, in conferring powers and imposing obligations on municipalities, may limit both the powers and the obligations as it sees fit. MacMullen v. Middletown, 187 N. Y. 37, 79 N. E. 863, 11 L. R. A. (N. S.) 391; Goddard v. Lincoln, 69 Neb. 594, 96 N. W. 273; Schigley v. City of Waseca, 106 Minn. 94, 118 N. W. 259, 19 L. R. A. (N. S.) 689, 16 Ann. Cas. 169. This power of a state to limit the obligations of a city, it is true, cannot extend to exempting it from an act or omission which would constitute an actionable wrong under the admiralty law. Workman v. New York, 179 U. S. 552, 21 Sup. Ct. 212, 45 L. Ed. 314. But the accident in this instance was not due to any act or omission on the part of the city which could possibly be designated a maritime tort. It could hardly be contended that there is any rule of admiralty requiring the city to superintend the details of loading a ship. Even careful licensing of stevedores would not have excluded the Foard Company; nor would it have excluded Bomhardt, for the testimony shows nothing against him except that he was pushing and boisterous and that he sometimes took a drink. It does not show that he was an inebriate or incompetent or generally careless.

But if invalidity of the act of 1912 be conceded, then we agree with the District Court that negligence cannot be imputed to the city in selecting the place of the accident as a proper one for unloading dynamite. Dynamite being a necessity and its transportation lawful, the community must bear such risk of damage from its transportation as cannot be avoided by due care. It is at least doubtful if any degree of care would result in finding an anchorage in the harbor, reasonably accessible, where the explosion of a cargo of dynamite would not be destructive. Remoteness from habitations and business houses, smoothness of water, freedom from fogs, ease of transfer from car to ship, must all be considered, and due care and sound judgment exercised. The conclusion of the District Court is well supported that under the facts before it the city chose wisely, or at all events that the choice was made by a competent official, acting with due care and in good faith, and that the city incurred no liability.

7. The employés of the Maryland Steel Company claim damages from that company for their injuries on the ground that the company violated its duty to furnish them a safe place to work by anchoring its ship, the Jason, on which they were employed, within 1,200 feet of the

Alum Chine laden with dynamite. As loading dynamite is not a nuisance, but is universally recognized as a legitimate business, and the Jason was in the designated anchorage grounds, it follows from the views already expressed that her owner is not liable to those who happened to be on the ship for not changing his anchorage, whenever it was discovered that another ship was loading dynamite. That has become one of the many perils which those who are employed on the sea take upon themselves.

Affirmed.