### CARR v. STEVENS et al.

(District Court, D. Maryland. February 11, 1924.)

**1. Master and servant ⬅315—Consignees of cargo held not negligent in employing fumigator.**

Where the grain inspector notified commission merchants to whom a schooner of wheat was consigned that the wheat would have to be fumigated, as there were weevils in it, *held*, that commission merchant was not guilty of negligence in employing a fumigator, who had previously done all of the fumigating for the grain trade at the port of destination without accident.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Master and servant ⬅═316(1)—Fumigator of cargo held independent contractor, liable for injury to vessel by explosion.**

Where the grain inspector notified commission merchant to whom a schooner of wheat was consigned that the wheat would have to be fumigated as there were weevils in it, and commission merchant employed a fumigator, who had done all the fumigating for the grain trade at the port of destination, and such fumigator poured carbon tetrachloride, a highly volatile fluid, into the wheat, and, due to the heat of the wheat, this caused an explosion, resulting in loss of schooner and cargo, *held* that fumigator was an independent contractor, and he alone was liable for the loss.

**3. Damages ⬅═188(2)—Evidence held to show that lost schooner was worth stated amount.**

In action by owner for loss of a schooner, evidence *held* to show that a schooner was worth $2,000, and that articles belonging to the schooner, which were salvaged, or which could have been saved, but for the negligence of the owner, were worth $500.

In Admiralty. Libel by Raymond Carr against R. Nelson Stevens, trading as Stevens Bros., and John G. Beck. Decree for libelant as against respondent John G. Beck, and libel dismissed as against respondent Stevens Bros.

S. Scott Beck, of Chestertown, Md., and Charles C. Wallace, of Baltimore, Md., for libelant.

James W. Chapman, Jr., and John H. Skeen, both of Baltimore, Md., for respondent Stevens Bros.

Arthur L. Jackson, of Baltimore, Md., for respondent Beck.

SOPER, District Judge. On August 23, 1922, the schooner Helen was loaded with wheat on the Eastern Shore of Maryland, consigned to Stevens Bros., commission merchants, at Baltimore, to be sold. Arriving at Port Covington on August 24th, Raymond Carr, the captain and owner of the vessel, notified the grain inspector, who came on board and inspected the cargo. The captain also notified Stevens Bros., and was told that the inspector had reported that there was weevil in the wheat, and that it would have to be fumigated. On the following day, Dr. John G. Beck, who had been employed by Stevens Bros. to fumigate the wheat, came on board for that purpose. He used a quantity of liquid, consisting of a mixture of carbon bisulphite and carbon tetrachloride, which was poured into the wheat in the hold of the vessel. The hatches were then covered and sealed. A short time thereafter, while the respondent Beck was still aboard, there was a dull explosion, accompanied by smoke, but without flame, which forced apart certain of the planks of the deck and of the sides of the boat, causing it to sink. There was some salvage of equipment, but the vessel itself was a total loss.

At the time of the fumigation of the wheat, it was very hot, not only because of the summer temperature, but more particularly because of the presence of weevil. Experienced witnesses testified that the temperature of wheat under such circumstances runs as high as 160° Fahrenheit. The chemical mixture employed was a highly volatile fluid. Carbon tetrachloride boils at 170° Fahrenheit, and carbon bisulphite

at 114° Fahrenheit. The mixture of the two begins to boil at a temperature less than 114° Fahrenheit. The evidence justifies the finding of fact that the liquid was converted into a gas when it came into contact with the heated grain, and the great expansion in volume of the gas as compared with the liquid, which ensued in the confined space in the vessel's hold, brought about the damage described.

While Dr. Beck had used a similar process many times in preceding years without injurious results, it is obvious that he relied too greatly on his past experience without adequate consideration of the peculiar qualities of the material employed. He himself produced at the trial a publication of the United States government which gave warning that it was dangerous to use such chemicals in a bin of grain. His explanation of the explosion was that it must have been caused by some fire on the boat, of which he had not been informed; but the evidence showed that there had been no fire on the vessel for several hours, and that no one was smoking during the process. A case against Dr. Beck is made out.

The libel must be dismissed as to Stevens Bros. For a number of years Dr. Beck had done all the fumigation work for the grain trade in Baltimore with success, and without accident. Stevens Bros. were guilty of no negligence in employing him, because of his experience and reputation. Indeed, he was the best, if not the only, man doing the work of fumigation, who was known to the trade. Nor was the work in itself inherently dangerous, and there was no reasonable probability that in the natural course of things the work would result in injury to anyone. Under the circumstances of the case, Dr. Beck was an independent contractor, and he alone is liable for the damage caused by his negligence. Foard v. State of Maryland, 219 Fed. 827, 135 C. C. A. 497.

[3] The value of the boat is the only question which remains to be considered. The captain of the vessel testified that in his opinion the vessel was worth $3,000; that he spent $200 for the hull, and spent $2,200 in providing new rigging, cabin, mast, sails, etc.; and that the work of fitting the vessel out was done by himself and his partner. On cross-examination, however, he was only able to give evidence of the cost of items which aggregated approximately $800, and failed to produce bills for these items or any additional sums, although the bills were in his possession, according to his testimony, after the suit was brought. After the vessel had been refitted, and the money and labor had been expended upon her, the present owner of the boat bought out the half interest from his former partner for $500.

Giving the most liberal estimate to the value of the work done by the owner and his partner in refitting the vessel, which undoubtedly was worth a substantial sum of money, the finding is that the vessel was worth at the time of the accident $2,000. From this amount should be deducted such articles, as the engine and yawlboat which were salvaged, and the value of other articles on the boat, estimated by the captain himself to be worth at least $300, which could have been saved, but were lost through negligence of the owner.

A decree will be signed for the libelant against Dr. John G. Beck for $1,500, and dismissing the libel as to the respondent Stevens Bros.