Joseph **LERMAN** and **Rose Lerman**, as Joint Tenants, Plaintiffs,

v.

Jerry M. **TENNEY**, Tenney Corporation, Tenney Realty Corporation of New York, Tenney Securities Corporation, Philip Levine, Richard Witrofsky, Alexander M. Field, Hilda Janis and 40 Exchange Realty Company, Defendants.

No. 67 Civ. 4527.

United States District Court
S. D. New York.

Jan. 14, 1969.

Ira Jay Sands, New York City, for plaintiffs.

Elson & Halperin, New York, City, for defendants.

MANSFIELD, District Judge.

In this purported class action on behalf of owners of partnership interests in 40 Exchange Place Company, a limited partnership, plaintiffs have moved for a preliminary injunction restraining its general partners from distributing the proceeds of sale of its asset, a 20-story office building located at 40 Exchange Place, Manhattan, until final adjudication of this action. The suit arises out of the defendants' issuance of a prospectus, upon their formation of the partnership in 1961 to acquire the property for the purpose of inducing investors to contribute additional capital in the sum of $2,086,500 needed to acquire and modernize the property, for which securities in the form of units of limited partnership interests were issued.

The complaint alleges that the 1961 prospectus was false and misleading in violation of § 17(a) of the Securities Act of 1933, § 10(b) of the Securities and Exchange Act of 1934 and Rule 10b5 promulgated thereunder, §§ 352–c and 352–e of the General Business Law of New York, McKinney's Consol.Laws, c. 20, and the common law. Plaintiffs' prayer is for money damages.

Defendants have recently contracted to sell the assets of the partnership and 86% of the present limited partners have consented to the sale on the condition that a distribution of the proceeds from the sale be made to the partners immediately after the closing, subject to a reserve for contingencies. Movants here represent, in part, a purported "sub-class" of purchasers of limited partnership interests who sold their interests at a loss prior to the commencement of this action and who will not participate in the distribution of proceeds from the sale of the partnership assets. They urge that unless the distribution is enjoined and the proceeds of the sale of the partnership's assets are withheld and invested in interest-bearing accounts pending the adjudication of this action, they will be left without an effective right of recovery. Their motion is opposed not only by defendants, but by an organization known as the "Limited Partners Committee," which represents a substantial number of lim-

ited partners in the 40 Exchange Place partnership.

■ A motion for a preliminary injunction is addressed to the sound discretion of the Court. Ideal Toy Corp. v. Fab–Lu Ltd., 360 F.2d 1021 (2d Cir. 1966), 7 Moore's Federal Practice ¶ 65.-04 at 1625 (2d ed. 1966). The purpose of such an injunction is to maintain the status quo pending a final determination of the merits. Unicon Management Corp. v. Koppers Co., 366 F.2d 199, 204 (2d Cir. 1966). The determination of such a motion requires the Court to weigh the movants' likelihood of success in the ultimate action and the possible irreparable injury if the motion is not granted against the possibility of injury to other parties if the motion is granted. Dino de Laurentiis Cinematografica, S. p.A v. D–150, Inc., 366 F.2d 373 (2d Cir. 1966). The burden on the movants is "less where the balance of hardships tips decidedly toward the party requesting the temporary relief" and if they raise serious and substantial questions going to the merits which present a "fair ground for litigation," temporary relief may be issued to preserve the status quo. Checker Motors Corp. v. Chrysler Corp. and Chrysler Motors Corp., 405 F.2d 319 (2d Cir. 1969).

The essence of the complaint is that the prospectus, as a whole, gave the false impression that the venture involved little risk with the likelihood of high return on investment. This rosy impression was allegedly conveyed by the inclusion in the prospectus of favorable estimates of future operations, income and anticipated distributions. The principal target of plaintiffs' claims of fraud are statements given prominence in the prospectus to the effect that the partnership had contracted to enter into a 15-year net lease of its only asset, the 40 Exchange Place premises, to Tenney Realty Corporation of New York ("Tenney") at a net rental which, with options to renew for five additional 15-year periods, would result in anticipated distributions of 10% per annum to

investors, with sufficient additional income from Tenney's operation of the premises to yield it an annual net income or "cushion" of $65,023 (after payment of rent to the partnership) during the first year. Plaintiffs' claim that these assurances were fraudulent because the lease permitted Tenney to assign its obligations without recourse and thus gave it in effect an option to pay rent to the partnership only as long as the property could be operated profitably, and if it became unprofitable, to assign it to a worthless shell corporation. Furthermore, although the prospectus referred to the lessee's right to assign without the landlord's consent, this mention was subordinated to the more prominent statements regarding the 10% per annum anticipated return and was coupled with the further statement that "it can be assigned without liability only if the assignee assumes full performance of the lease." Plaintiffs claim that the latter statement was wholly inadequate to remove the false and misleading impression created by the prospectus as a whole, especially since Tenney was not required to deposit any security as protection against the consequences of an assignment to a shell corporation. Plaintiffs contend that the prospectus should have given equal prominence to Tenney's right to assign the lease without the landlord's consent to a third party without deposit of security or other assurance as to the assignee's financial responsibility.

Needless to say, Tenney's operations proved to be unprofitable from the outset. The $65,023 "cushion" did not materialize, and in late 1963 Tenney defaulted and assigned the lease without recourse. At the time of assignment Tenney owed the partnership $133,170, which was charged against income for the year 1965. Although the partnership, during the seven-year period from 1961 to 1968, distributed to its limited partners $546,000 in cash, which amounted to approximately 26% of their original investment, this fell far short

of the 10% per annum featured in the original prospectus.

In addition to the claim of fraud based upon the foregoing, plaintiffs also assert that the prospectus was fraudulent in that the premises at 40 Exchange Place, which represented the partnership's sole asset, were actually worth only $3.5 million at the time when they were acquired by the partnership in 1961 for $4,272,000, and the prospectus failed to disclose this over-evaluation.

Although some of plaintiffs' claims of fraud may smack of hindsight, they contend that the trend toward unprofitable operation of the leased premises was foreseeable by defendants at the time when they issued the prospectus, or that the conditions leading to the decrease in gross earnings and the increase in expenses were ascertainable by the defendants in the exercise of reasonable prudence. An issue of fact is therefore presented as to whether the defendants knew or reasonably could be expected to know the risks involved in the venture and failed to make an adequate disclosure of these risks in the prospectus.

Having in mind that proof of the type of "fraud" required to establish violation of some of the federal securities laws alleged in the complaint is less than the rigid standards established by common law, see Securities and Exchange Commission v. Capital Gains Bureau, Inc., 375 U.S. 180, 191–192, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963), we believe that plaintiffs have raised sufficiently substantial and serious questions going to the merits to present ample ground for litigation. Unicon Management Corp. v. Koppers Co., supra; Dino de Laurentiis Cinematografica, S.p.A. v. D-150, Inc., supra; Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953). A cursory reading of the prospectus by one not versed in real estate transactions does give the impression that the venture is relatively riskless. It has been suggested that in such ventures the various risk elements should be clearly outlined. See Matter of Franchard Corp., CCH Fed.Sec.L.Rep. ¶ 77,-113 at p. 82,051.

Turning to consideration of the balance of hardships, movants urge that if all the proceeds of the sale of the partnership assets are distributed, the partnership will be an empty shell and any judgment they might obtain would be a hollow one. Plaintiffs further state under oath that the general partners could not respond in money damages to a substantial judgment, and defendants have failed to submit any affidavit proof to the contrary. Thus it appears that the balance of hardships tips decidedly toward the movants and that irreparable injury may occur to them and to owners of limited partnership interests similarly situated unless some provision is made for the protection of their rights. The requested injunction against the entire distribution, however, asks for a more drastic remedy than is required, particularly when 86% of the limited partners have consented to the sale on the condition that all the proceeds be distributed immediately thereafter with the exception of a reserve to be held for contingencies.

Both parties, however, have informed the Court that the rights of the applicants herein could be protected by the creation of a reserve fund out of the distributable assets of the sale ($2,-100,000), which fund would be equal to 10% of the distributable proceeds, or $210,000. Consequently, plaintiffs' motion is denied on the condition that upon sale of the partnership assets defendants retain a fund to protect the rights of the applicants in the amount of $210,-000, if the applicants furnish a bond in the sum of $25,000 for the protection of any person wrongfully injured as a result of this order.

The foregoing sets forth the Court's findings of fact and conclusions of law as required by Rule 52(a), F.R.Civ.P.

The motion is disposed of as hereinabove indicated. Settle order in accordance with Rule 65(d), F.R.C.P.