Chester **KUBIK** et al., Appellants,

v.

Morton **GOLDFIELD** and Albert Teller & Co., Inc., Appellees.

No. 72–1039.

United States Court of Appeals, Third Circuit.

Argued Feb. 1, 1973.

Decided May 30, 1973.

---

474

Melvin Brookman, Joseph D. Shein, Shein, Mele & Brookman, Philadelphia, Pa., for appellants.

Fred C. Aldridge, Jr., Andre L. Dennis, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for appellees.

Before SEITZ, Chief Judge, ALDISERT, Circuit Judge, and FISHER, District Judge.

## OPINION OF THE COURT

CLARKSON S. FISHER, District Judge.

The issue presented by this appeal is whether a motion for summary judgment brought by appellees and granted by the district court was appropriate under Rule 56 of the Federal Rules of Civil Procedure which provides that summary judgment be granted only when there is "no genuine issue as to any material fact."

This is an action by purchasers of securities against a securities dealer and one of its registered representatives to recover the purchase price of the stock and other damages. On May 8, 1967 appellants Marquez purchased 500 shares of Interamerican Industries, Ltd., a Canadian company, from appellee Albert Teller Company, Inc. through its salesman-representative appellee Goldfield. On the same date, appellant Kubik bought 300 shares of Interamerican Industries, Ltd. from these same appellees.

Interamerican Industries, Ltd. stock was first offered to the public in the United States by the issuer or by or through an underwriter in July, 1966. Lustgarten v. Albert Teller & Co., 304 F. Supp. 771, 772 (E.D.Pa.1969). On May 18, 1967 the Securities and Exchange Commission ordered the suspension of over-the-counter trading of this stock because no registration statement was effective as required by Section 5 of the Securities Act of 1933.[1]

Appellants' suit consisted of two claims against the appellees: (1) the sale to appellants of unregistered securities (Interamerican Industries, Ltd. stock) by the appellees in violation of Section 5 of the Securities Act of 1933, and (2) failure of appellees to disclose that such securities were unregistered and other facts to the appellants in violation of the fraud provisions of the Securities Act of 1933 (Sections 12(2) and 17(a))[2] and of the Securities and Exchange Act of 1934 (Section 10(b)).[3]

1. 15 U.S.C. Sec. 77e (1971).

2. 15 U.S.C. Sec. 77l(2) & 77q(a) (1971).

3. 15 U.S.C. Sec. 78j(b) (1971).

The court below granted summary judgment on its finding that the sales by the appellees were within the dealer's exemption provided by Section 4(3) of the Securities Act of 1933. However, as to the alleged violation of the fraud provisions, the court below did not discuss this claim in its opinion and order which granted summary judgment for the appellees.

## VIOLATION OF SECTION 5

■ Appellees admitted that they sold shares of Interamerican Industries, Ltd. stock to the appellants and that this stock had no effective registration statement as required by Section 5. Although the stock was unregistered in violation of Section 5 requirements, the appellees raised the statutory defense of a dealer's exemption provided by Section 4(3) of the Securities Act of 1933.[4] Appellees claimed to be exempt from the registration requirements of Section 5 because they took the position that they were "dealers" as defined by Section 2 (12),[5] and because the transactions complained of occurred subsequent to the expiration of forty days after the first date upon which the security was bona fide offered to the public by the issuer or by or through an underwriter. *Lustgarten, supra.*

Appellants, however, argued that no "bona fide" offer to the public had occurred even though the Interamerican Industries stock had been quoted since July, 1966 in the National Daily Quotation Service, commonly known as the "pink sheets," because the Interamerican Industries stock was "unlawfully" distributed (i.e., without effective registration statement and without satisfying a security exclusion or a transaction exemption).

The court below properly held that the appellees were entitled to the dealer's exemption under Section 4(3) of the Securities Act of 1933 because they were "dealers" as defined by that Act and because there had been a "bona fide" offering of the stock to the public for more than forty days prior to the disputed transaction since the stock had been quoted in the "pink sheets" since July, 1966. The district court correctly ruled that for the purposes of determining a dealer exemption under Section 4(3) of the Securities Act of 1933, a "bona fide" offer to the public may occur when a stock first appears in the "pink sheets," even though the stock may be "illegally" unregistered. Securities and Exchange Commission v. North American Research & Development Corp., 280 F.Supp. 106, 125 (S.D.N.Y. 1968), aff'd in part, vacated in part, 424 F.2d 63, 81 n. 14 (2nd Cir. 1970); H.R. Rep. No. 1542, 83d Cong., 2d Sess. (1954), reported in U.S.Code Cong. & Admin.News, pp. 2973, 2995 (§ 6, ¶2) (1954).

*North American Research, supra,* involved a scheme by several confederates to acquire the stock of a shell corporation and vest that corporate shell with the kind of "assets" that would entice investors in speculative securities, thereby creating a market for this stock. When the Securities and Exchange Commission sought to enjoin these fraudulent activities, several defendant broker-dealers claimed Section 4(3) dealer transaction exemptions. *North American Research, supra,* 280 F.Supp. at 124. These claims were denied.

---

4. 15 U.S.C. Sec. 77d (1971) states:
    The provisions of section 77e of this title shall not apply to—. . .
    (3) transactions by a dealer (including an underwriter no longer acting as an underwriter in respect of the security involved in such transaction), except—
    (A) transactions taking place prior to the expiration of forty days after the first date upon which the security was bona fide offered to the public by the issuer or by or through an underwriter.

5. 15 U.S.C. Sec. 77b(12) (1971) states:
    The term "dealer" means any person who engages either for all or part of his time, directly or indirectly, as agent, broker, or principal, in the business of offering, buying, selling, or otherwise dealing or trading in securities issued by another person.

The stock was first quoted in the "pink sheets" on June 27, 1967. The collaborators had arranged for the quotations to appear and a block of 25,000 shares to be traded to one of their wives on that same day, June 27, 1967. However, prior to the expiration of forty days from that date, the S.E.C. suspended trading in the stock on July 20, 1967. Even though the opinion refers to a Section 4(3) "bona fide" offer occurring on the date that "trading commenced," a close analysis of the facts reveals that, as the district court found, a "bona fide" offer occurs when the stock is first quoted in the "pink sheets." *Compare North American Research, supra,* 424 F.2d at 81 n. 14 with *North American Research, supra,* 280 F.Supp. at 125. The court did not dispute the district court's suggestion that had a defendant dealer waited until August 6, 1967, forty days after the first quotation of the North American Research stock in the "pink sheets," the Section 4(3) exemption would have been available.

Therefore, we find that here the court below correctly determined that appellees were entitled to the dealer's exemption under Section 4(3) of the Securities Act of 1933, and thus, the appellees in their sales to the appellants were not in violation of Section 5 of the Securities Act of 1933. If the appellants' only claim was the alleged violation of Section 5, we would be compelled to affirm the grant of summary judgment.

## VIOLATION OF FRAUD PROVISIONS

■ The appellants' second claim concerning violation of fraud provisions of the 1933 and 1934 Acts [6]—as best can be discerned from their inartfully drawn complaint—consisted of two basic allegations.[7] First, appellants contend that the appellees knew or should have known that Interamerican Industries stock was unregistered. Appellants argue that registration, or lack of it, is a material fact, the omission of which gives rise to statutory liability.[8] Sec-

---

6. Under the securities statutes, fraud is not limited to the common law elements of deceit. S.E.C. v. Capital Gains Bureau, Inc., 375 U.S. 180, 192–195, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963); Hooper v. Mountain States Securities Corp., 282 F.2d 195, 201 (5th Cir. 1960); S.E.C. v. Gulf Intercontinental Finance Corp., 223 F.Supp. 987, 993 (S.D.Fla. 1963); Azalea Meats, Inc. v. Muscat, 246 F.Supp. 780, 782 (S.D.Fla.1965); Lerman v. Tenney, 295 F.Supp. 780, 783 (S. D.N.Y.1969)

7. The specific statutory basis for appellants' claims of fraud are unclear from the complaint. Apparently the claims based upon failure to disclose the lack of registration are based upon Sections 12(2) and 17(a) of the Securities Act of 1933. Under Section 17(a) the failure to state the whole truth with regard to a security is equally as unlawful as the statements of half-truths or deliberate falsehoods. It is the impression created by the statements which determines whether they are misleading. In re American Trailer Rentals Co., 325 F.2d 47, 53 (10th Cir. 1963). Those claims relating to the misrepresentations of the salesman are apparently

based upon Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. Sec. 78j(b) (1971), and Rule 10b–5 thereunder, 17 C.F.R. 240.10b–5. Under these provisions, activity which purveys false or deceptive information to a potential investor for the purpose of inducing investment is unlawful. *See, e. g.,* Securities & Exchange Commission v. International Chemical Development Corp., 469 F.2d 20, 27 (10th Cir. 1972). It would be inappropriate at this stage of the proceedings for this court to discuss the merits of these claims, but it should be noted that each of these provisions contain different elements and are subject to different defenses.

8. A material fact is any information about which an average prudent investor ought reasonably to be informed before purchasing a security or if its existence or non-existence is a matter to which a reasonable man would attach importance in determining his choice of action in the transaction in question. Johns Hopkins University v. Hutton, 422 F.2d 1124, 1128–1129 (4th Cir. 1970); Gilbert v. Nixon, 429 F.2d 348, 355–356 (10th Cir. 1970).

ond, appellants claim that appellee Goldfield fraudulently concealed facts regarding the risk involved in purchasing the stock and that he made further misrepresentations which appellants relied upon to their detriment.[9]

Apparently the court below made no findings with reference to appellants' allegations of fraud.[10] There is no discussion of appellants' claims of fraud in the district court's opinion and order which granted summary judgment for the appellees.[11] Therefore, summary judgment was inappropriate at this time. The case must be remanded for a determination concerning this fraud claim. We express no opinion as to whether summary judgment would be appropriate on the fraud claim once the district court considers the matter.[12]

We note, however, Section 4 creates exemptions only from the registration requirements of Section 5 and not from the anti-fraud provisions of Section 17(a).[13] Lawrence v. Securities and Exchange Commission, 398 F.2d 276, 280 n. 6 (1st Cir. 1968). There is no justification for interpreting Section 4 to destroy the plain meaning and efficacy of the anti-fraud provisions of the securities statutes. Newman v. Weinstein, 229 F.Supp. 440, 442 (N.D.Ill. 1964). Even though the appellees are entitled to exemption from the registration requirements under Section 4(3), they are not thereby exonerated from liability for fraudulent activities.

Accordingly, although we agree the district court correctly found the appellees within the dealer exemption as to the alleged Section 5 violation, we vacate the order granting summary judgment and remand the case for further proceedings with respect to the alleged violation of the fraud provisions.

9. Appellee Goldfield specifically denied these allegations in paragraphs three and four in his affidavit of May 1, 1970.

10. Professor Moore has suggested that summary judgment may be inappropriate if an action is based upon a complex scheme of fraud. In cases involving allegations of fraud, he has also stated:

In ruling on the motion (for summary judgment), the court should remember that the movant has the burden of demonstrating clearly the absence of any genuine issue of material fact, that the court should not draw factual inferences in favor of the moving party, and should not resolve a genuine issue of credibility. 6 Moore's Federal Practice (2d ed.) ¶ 56.17(27) at 2554.

11. *Compare* Tennessee Valley Authority v. 9.6 Acres of Land, 456 F.2d 1116, 1117 (6th Cir. 1972) where the district court failed in its order and memorandum of summary judgment to refer to certain claims raised in the affidavits and other documents filed with the motion.

12. Appellees raise the defense of the statute of limitations provided in Section 13 of the 1933 Act. 15 U.S.C. Sec. 77m (1971). The parties disputed the facts as to when the statute commenced to run. We express no opinion on this issue without sufficient factual findings on the record. Since Section 13 requires a standard of reasonable diligence by the plaintiff, it is the function of the trier of the facts to determine when the statute commenced to run, especially when a jury is involved. Johns Hopkins University v. Hutton, 422 F.2d 1124, 1131 (4th Cir. 1970). The record before us reveals this factual dispute which we consider only to determine the propriety of summary judgment under Rule 56. It should be noted that Section 13 applies only to Section 12(2) liability. Claims under Section 17(a) and Section 10(b) are governed by analogous state statutes of limitations. Premier Industries v. Delaware Valley Financial, 185 F.Supp. 694, 696 (E.D.Pa.1960).

13. 15 U.S.C. Sec. 77q (1971).