**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**CAL–AM CORPORATION, Allstate Securities, Inc., Legal Mortgage Corp., Dixie Natural Resources, Inc., Dynarad, Inc., Go Publishing, Inc., Bio Science Resources, International Coal Mining Leases, Inc., Black Rock Natural Resources, Inc., Kings Point Corporation, GPL Investments, Inc., GPF Coal Investments, Inc., Cambridge Corporation, Polytex International, Inc., Joseph R. Laird, Kenneth J. Fisher, James R. Forbes, Warren H. Baker, John E. Crooks, Arthur J. Serxner, Robert Spillane, Earl J. Martinson, John Eagen and Donald R. Ford, Defendants.**

No. CV 77–4586–AAH.

United States District Court, C. D. California.

Feb. 24, 1978.

Gerald E. Boltz, Regional Administrator, Ralph H. Erickson, Asst. Regional Administrator, Charles R. Hartman, III, Regional Counsel, and Deborah R. Gatzek, Atty., by Ernest T. Kaufmann, Los Angeles, Cal., for plaintiff.

Nasatir, Sherman & Hirsch by Michaeline A. Re, Atty., Los Angeles, Cal., for defendants.

## DECISION AND ORDER

HAUK, District Judge.

This case is a civil action brought by the SEC against 24 individual and corporate defendants, seeking injunctive relief based on alleged violations of various provisions of the securities laws. The complaint consists of four causes of action; five defendants have moved this Court to dismiss the complaint and action. The first count alleges that 23 of the defendants participated in a complex nationwide scheme to defraud investors through the sale of securities in limited partnerships, purported tax shelter investments, and investment contracts;[1] this scheme allegedly violates § 17(a) of the 1933 Act, 15 U.S.C. § 77q(a),[2] and § 10(b) of the 1934 Act, 15 U.S.C.

---

1. Essentially, the plaintiff SEC alleges three separate schemes which, taken in conjunction, amount to one massive, nationwide, complex scheme undertaken by the defendants. The first scheme, "the 1975 program," involved the sales of interests in limited partnerships formed to purchase and operate units in a high-rise resort condominium in Hawaii. Plaintiff's complaint, ¶ 34. The second scheme, "the 1976 program," involved the sale of interests in limited partnerships allegedly formed to obtain tax shelter and other economic benefits from the operation of coal mines and oil wells. Plaintiff's Complaint, ¶ 36. The third scheme, "the 1977 program," involved the sale of unregistered investment contracts in coal mining operations and other items. Plaintiff's Complaint, ¶ 43.

2. § 77q. Fraudulent interstate transactions

(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

§ 78j(b),[3] and rule 10b–5, 17 C.F.R. § 240.-10b–5 (1977).[4] The second count alleges violations of the registration requirements of § 5(a) and § 5(c) of the 1933 Act, 15 U.S.C. §§ 77e(a)[5] and 77e(c)[6] by fifteen of the defendants. The third count charges four defendants with further securities fraud in the sale of Cal-Am securities in violation of § 10(b) and rule 10b–5. The fourth count charges three corporate defendants with failing to file periodic reports to the SEC as required by § 13(a) of the 1934 Act, 15 U.S.C. § 78m(a).[7] In addition

to seeking permanent injunctive relief, the complaint requests the appointment of a special master to supervise an audit of the books and records of sixteen of the defendants.

The defendants in this case have taken varying actions. The major defendants— Cal-Am Corporation, Joseph R. Laird, Kenneth J. Fisher, Cambridge Corporation, and Poly-Tex International, Inc.—have consented to the granting and extending of a temporary restraining order against further activity by them.[8] One defendant—Donald

---

3. § 78j. Manipulative and deceptive devices

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

4. § 240.10b–5 Employment of manipulative and deceptive devices.

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interestate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person. in connection with the purchase or sale of any security.

5. § 77e. Prohibitions relating to interstate commerce and the mails

(a) Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—

(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or

(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any

such security for the purpose of sale or for delivery after sale.

6. § 77e. Prohibitions relating to interstate commerce and the mails

(c) It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 77h of this title.

7. § 78m. Periodical and other reports

(a) Every issuer of a security registered pursuant to section 78*l* of this title shall file with the Commission, in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate for the proper protection of investors and to insure fair dealing in the security—

(1) such information and documents (and such copies thereof) as the Commission shall require to keep reasonably current the information and documents required to be included in or filed with an application or registration statement filed pursuant to section 78*l* of this title, except that the Commission may not require the filing of any material contract wholly executed before July 1, 1962.

(2) such annual reports (and such copies thereof), certified if required by the rules and regulations of the Commission by independent public accountants, and such quarterly reports (and such copies thereof), as the Commission may prescribe.

Every issuer of a security registered on a national securities exchange shall also file a duplicate original of such information, documents, and reports with the exchange.

8. On December 8, 1977, the same day as the SEC filed the complaint in this case, these five

R. Ford—consented to the issuance of a permanent injunction restraining his activities. Another defendant—John Crooks—has answered the complaint. Other defendants have taken no action. The instant motion involves the action taken by five of the individual defendants.

The five individual moving defendants— Warren H. Baker (a CPA, the head of defendant Allstate Securities, Inc., a broker-dealer controlled by Cal-Am, and part of the Cal-Am sales team), Arthur J. Serxner (national sales director for Cal-Am), Robert Spillane (salesperson for Cal-Am), Earl J. Martinson (salesperson for Cal-Am), and John Eagen (salesperson for Cal-Am)—each of whom is named only in Counts I and II—have moved.to dismiss the complaint on the grounds that (1) the Court lacks jurisdiction over the subject matter of the case; and (2) the complaint fails to state a claim upon which relief could be granted. More specifically, these five defendants argue, first, that the transactions in question were "private offerings" within the meaning of § 4(2) of the 1933 Act, 15 U.S.C. § 77d(2), that the securities laws are inapplicable to such offerings, and that the Court therefore lacks subject matter jurisdiction. Second, these defendants specifically argue that the

allegations of the complaint regarding their activity must be dismissed because these allegations in the complaint fail to satisfy the pleading requirements of Rules 8 and 9 of the Federal Rules of Civil Procedure. In addition to these major arguments, the defendants also argue that the complaint fails to state a claim for relief and that the SEC has not met the showing required for injunctive relief.

The Court finds that each of the defendants' arguments lacks merit. Therefore, the Court must deny the defendants' motion to dismiss.

## I. Private Offering Defense

Defendants' first argument is that since the transactions involved in this case are "private offerings" within the meaning of § 4(2) of the 1933 Act, 15 U.S.C. § 77d(2),[9] the private offering exemption contained in § 4(2) precludes the SEC from bringing suit. This argument is without any merit.

■ Initially, the Court notes that even if the transactions are deemed to be private offerings, this finding would relate only to the second cause of action, alleging violation of the registration requirements of the securities laws. Section 4(2) only affords an exemption from the registration requirements of § 5 of the 1933 Act, 15 U.S.C. § 77e;[10] it does not provide a defense to an

---

defendants stipulated and consented to the entry of a temporary restraining order for 60 days. This order enjoined these defendants from engaging in any practice violative of the securities laws and further enjoined them from engaging in various specified acts. On February 13, 1978, the parties consented to a 10-day extension of this temporary restraining order.

9. § 77d. Exempted transactions
The provisions of section 77e of this title shall not apply to—
(2) transactions by an issuer not involving any public offering.

10. § 77e. Prohibitions relating to interstate commerce and the mails
(a) Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—
(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or
(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any

such security for the purpose of sale or for delivery after sale.
(b) It shall be unlawful for any person, directly or indirectly—
(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to carry or transmit any prospectus relating to any security with respect to which a registration statement has been filed under this subchapter, unless such prospectus meets the requirements of section 77j of this title; or
(2) to carry or cause to be carried through the mails or in interstate commerce any such security for the purpose of sale or for delivery after sale, unless accompanied or preceded by a prospectus that meets the requirements of subsection (a) of section 77j of this title.
(c) It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such se-

action alleging violations of § 17(a) or § 10(b). Section 17(a), section 10(b), and rule 10b–5 apply to all sales of securities involving omissions or misrepresentations of material facts. *Kubik v. Goldfield*, 479 F.2d 472, 477 (3d Cir. 1973); *Lawrence v. SEC*, 398 F.2d 276, 280 n.6 (1st Cir. 1968); *Sohns v. Dahl*, 392 F.Supp. 1208, 1218–19 (W.D.Va.1975). Thus, even if the Court were to deem the transactions to be private offerings, this finding would not affect the antifraud cause of action in Count I.

■■■ But, more importantly, the transactions involved in this case cannot qualify as private offerings. No one objective standard exists as to whether an offering is "private" within the meaning of § 4(2); rather, in considering whether a transaction or series of transactions is a private offering, the Court must consider a number of factors. See *SEC v. Ralston Purina Co.*, 346 U.S. 119, 126–27, 73 S.Ct. 981, 97 L.Ed. 1494 (1953). These factors include the access of investors to information ordinarily found in registration statements, *SEC v. Ralston Purina Co.*, 346 U.S. 119, 126–27, 73 S.Ct. 981, 97 L.Ed. 1494 (1953); *Hill York Corp. v. American International Franchises*, 448 F.2d 680, 690–91 (5th Cir. 1971); the sophistication of the investors, *SEC v. Ralston Purina Co.*, 346 U.S. 119, 126–27, 73 S.Ct. 981, 97 L.Ed. 1494 (1953); *Bowers v. Columbia General Corp.*, 336 F.Supp. 609, 623–24 (D.Del.1971); the size and scope of the offering, *Doran v. Petroleum Management Corp.*, 545 F.2d 893, 899–900 (5th Cir. 1977); *Hill York Corp. v. American Inter-*

*national Franchises*, 448 F.2d 680, 689 (5th Cir. 1971); and the number of investors, *Doran v. Petroleum Management Corp.*, 545 F.2d 893, 899–900 (5th Cir. 1977); *Hill York Corp. v. American International Franchises*, 448 F.2d 680, 688 (5th Cir. 1971); *Bayoud v. Ballard*, 404 F.Supp. 417, 423 (N.D.Texas 1975). Most importantly, the party seeking to prove the existence of the exemption bears the burden of demonstrating the propriety of that exemption. *SEC v. Ralston Purina Co.*, 346 U.S. 119, 126, 73 S.Ct. 981, 97 L.Ed. 1494 (1953); *Pennaluna & Co. v. SEC*, 410 F.2d 861, 865 (9th Cir. 1969), *cert. denied*, 396 U.S. 1007, 90 S.Ct. 562, 24 L.Ed.2d 499 (1970).

In this case, the defendants have offered no factual evidence demonstrating that the exemption is proper.[11] The SEC, on the other hand, contends that the allegations of the complaint state that the offering involved approximately 4000 investors in a $40 million investment scheme.[12] Given the size and scope of the offering and the number of investors alleged in the complaint, the defendants can scarcely contend that the Court should find a private offering exemption available in this case. In any event, regardless of the truth of the allegations in the complaint, the defendants have offered no factual evidence indicating that the offering in this case should be classified as a private offering within the meaning of § 4(2). Accordingly, the defendants have not carried the burden of demonstrating the availability of the exemption.[13] There-

curity, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 77h of this title.

11. See Memorandum of Points and Authorities In Support of Defendants' Motion to Dismiss at 3–5.

12. See Plaintiff's Complaint ¶ 30. *See also* Plaintiff's Complaint ¶ 34 ($2.5 million raised from 400 investors in 1975 scheme); ¶ 36 ($30 million raised from 3000 investors in 1976 scheme); and ¶ 43 ($5 million raised from 500 investors in 1977 scheme). These and all the allegations of the plaintiff's first cause of action are incorporated by reference into the plaintiff's second cause of action, which is at issue

in this section of the opinion. Plaintiff's Complaint, ¶ 51.

13. The defendants cannot qualify for the private offering exemption under either of two possibly applicable SEC rules either.

The most important method of qualifying for a § 4(2) exemption is compliance with SEC Rule 146. Rule 146 requires, however, as one of the conditions necessary to qualify as a private offering under the terms of the rule, that no more than 35 individuals purchase the issue. The offerings in this case involved more than 35 purchasers. SEC Rule 240 provides for a § 4(2) exemption for issues involving less than $100,000 under certain conditions. The offerings in this case exceeded this $100,000 figure.

fore, the motion to dismiss the complaint on that ground is denied.

## II. Pleading Requirements

Defendants base their second argument on the alleged failure of the complaint to comply with the pleading requirements of Rules 8 and 9 of the Federal Rules of Civil Procedure. Since each of these causes of action involves a different rule and different pleading requirements, it is useful to divide this argument into two subsections.

### A. First Cause of Action—Fraud

■ Because the first cause of action alleges fraud in violation of § 17(a) of the 1933 Act and § 10(b) of the 1934 Act, the Rule 9 requirement that "In all averments of fraud . . ., the circumstances constituting fraud . . . shall be stated with particularity" is applicable. Fed.R. Civ.P. 9(b). Defendants argue that the allegations of the complaint do not specify the time, place, and manner of the alleged fraudulent acts and therefore do not meet the requirements of Rule 9(b).

■ The specificity requirement of rule 9(b) in the context of securities fraud means that mere conclusory allegations or general statements alleging fraud fail to satisfy the rule, but that allegations of fraud in connection with identified acts or omissions does satisfy the rule. *Felton v. Walston & Co.*, 508 F.2d 577 (2d Cir. 1974);

*Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374 (2d Cir. 1974).

■ In this case, the plaintiff SEC has alleged more than mere conclusory allegations in the first cause of action. The complaint delineates, with sufficient specificity, the scheme used to defraud investors [14] and the defendants' participation in that scheme.[15] The Court holds that the complaint does allege fraud in connection with identified acts and omissions, and therefore denies the motion to dismiss based on this argument.

### B. Second Cause of Action—Violation of Registration Requirements

■ Since the second cause of action alleges violation of the registration requirements of the securities laws, and does not allege fraud, the general pleading requirements of Rule 8 apply to the second cause of action. Basically, Rule 8 requires only a "short and plain statement" of the claim for relief. Fed.R.Civ.P. 8(a). The defendants argue, however, that the complaint fails to meet this standard because it does not provide them with sufficient notice of the charges against them and that the complaint must be dismissed for that reason.

■ While the allegations of the second cause of action do not themselves specify which securities should have been registered, the second cause of action incorporates by reference the allegations of the first cause of action.[16] The Court holds

---

**14.** See Plaintiff's Complaint, ¶¶ 30–50. *See also* footnote 1, *supra*.

**15.** Specifically, the complaint alleges inter alia, that defendants Serxner, Spillane, Martinson, and Eagen were part of Cal-Am's sales team, ¶ 33; that defendants Serxner, Martinson, Spillane and Eagen made false assurances to approximately 150 outside brokerage firms that the securities were not subject to SEC regulation, *id.*; that defendants Serxner, Martinson, Spillane, and Eagen took part in the execution of the 1975 scheme by helping raise over $2.5 million from 400 public investors, ¶ 34; that defendant Baker acted as an underwriter of the 1976 program, ¶ 37; that defendants Baker, Serxner, Martinson, Spillane, and Eagen coordinated the sales efforts of 150 brokerage firms and salesmen with regards to the 1976 program, *id.*; that these defendants made payments of cash and interests in the 1976 program to salesmen to encourage sales, *id.*; that defendants Baker, Serxner, Martinson, Spil-

lane, and Eagen distributed offering materials for the 1976 program to the public which contained material omissions of facts ¶ 40; that defendants Serxner, Martinson, Spillane, and Eagen are currently offering and selling the 1977 program through brokerage firms and salesmen throughout the country, ¶ 46; that these defendants have paid salesmen in excess of their commissions and provided free trips for them, *id.*; that these defendants have made untrue statements of various specified material facts at times from 1975 to the present, ¶ 48; and that these defendants have omitted to state various specified material facts at times from 1975 to the present, ¶ 49.

**16.** See footnote 12, *supra*. For example, ¶ 43 of the Plaintiff's Complaint refers to unregistered investment contracts; this portion of the complaint, incorporated into the second cause of action by ¶ 51, relates directly to an alleged violation of the registration requirements.

that the second cause of action, with the allegations of the first cause of action incorporated therein, does provide the defendants with a short and plain statement of the claim for relief against them. Consequently, the Court denies the defendants' motion to dismiss based on this alleged defect in the complaint.

### III. Defendants' Other Contentions

The defendants make two additional arguments. Neither of these is meritorious.

First, defendants argue that the complaint fails to state any claim for relief. Taking the allegations of the complaint as true, as the Court must on hearing a motion to dismiss a complaint, *Walling v. Bevery Enterprises*, 476 F.2d 393, 395 (9th Cir. 1973), the two causes of action involved in this motion undoubtedly do state claims for relief. Both the first and the second causes of action contain the necessary elements of those causes of action.[17]

 Second, defendants argue that the SEC has not met the requirements for equitable relief in this case for two reasons. First, they argue that the SEC has not demonstrated irreparable harm, likelihood of success on the merits, and the other factors ordinarily taken into account in deciding whether injunctive relief is proper. To the extent that defendants rely on this argument, they mistake the nature of the power of the SEC. In order to obtain injunctive relief, the SEC need only show that future violations of securities laws are likely to occur. *SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 808–09 (2d Cir. 1975); *SEC v. Manor Nursing Centers*, 458 F.2d 1082 (2d Cir. 1972). Second, defendants argued at the oral hearing on their motion that even if the rule cited above is applicable, the complaint fails to show that these defendants are likely to violate securities laws in the future. This argument is fatuous, because the complaint does allege that these defendants are involved in a current scheme to defraud investors,[18] and current misfeasance is always one of the best indications of the likelihood of future transgressions.

For these reasons, the Court must and does: (1) deny the motion to dismiss based on the private offering exemption theory offered by the defendants; (2) deny the motion to dismiss upon defendants' claim of plaintiff's failure to comply with the pleading requirements of Rules 8 and 9; and (3) rejects as completely frivolous the two other arguments raised by the defendants in support of their motion to dismiss.

### ORDER

Based upon the foregoing decision, the Court finds that it does have jurisdiction to hear this case and that the complaint does satisfy the pleading requirements of the Federal Rules of Civil Procedure. Therefore, the Court hereby denies the defendants' motion to dismiss the complaint.

The defendants shall have 30 days within which to answer the complaint.

The Clerk of this Court is directed to file and enter this Decision and serve all parties forthwith.

17. For the requirements of proving violations of the various securities laws in issue, see notes 2–7 *supra.*

18. Plaintiff's Complaint, ¶¶ 43–46.