Yetta Shapiro SULTAN, Individually and on behalf of all other Purchasers of Limited Partnership Securities Units in Bessemer-Birmingham Motel Associates, similarly situated, Plaintiff,

v.

BESSEMER–BIRMINGHAM MOTEL AS-SOCIATES et al., Defendants.

No. 70 Civ. 3217.

United States District Court,
S. D. New York.

Dec. 8, 1970.

Ira Jay Sands, New York City, for plaintiff; Samuel H. Golden, New York City, of counsel.

Lans, Feinberg & Cohen, New York City, for defendants Samuel Nadelson and O. Taft Nelson; Asher B. Lans, Robert S. Cohen, New York City, of counsel.

## MEMORANDUM OPINION

LASKER, District Judge.

In this suit alleging violations of the securities laws of the United States and the New York law, plaintiff moves (1) for a preliminary injunction against the sale of a motel belonging to defendant Bessemer-Birmingham Motel Associates ("Bessemer") or for alternative injunctive relief, and (2) to designate the case a class action under Rule 23(a) of the Federal Rules of Civil Procedure. Defendants Nadelson and Nelson move for an order pursuant to Rule 12, F.R.Civ. P., requiring plaintiff to "submit an amended complaint."

## FACTS

Plaintiff purchased $10,000 of an offering of $675,000 limited partnership interests in Bessemer. The partnership interests were sold in connection with a Prospectus dated April 12, 1961, and it

is stated that approximately 180 persons purchased such securities on the basis of the representations in the Prospectus.

Bessemer is a limited partnership organized in New York State in 1961 for the purpose of purchasing for investment the title to the Holiday Inn Motel located in Bessemer, Alabama. The Units in the partnership were offered for sale through Interamerica Securities Corp. as underwriter. Interamerica is wholly owned by Jules Yablok, a general partner of Bessemer. Among other general partners are Samuel Nadelson and O. Taft Nelson, who appear in opposition to plaintiff's motion to declare a class action and in support of their own motion to compel an amended complaint. Defendants Harrison and Gittler are represented by the same counsel as Nadelson and Nelson, but do not appear on the motions nor do any other defendants.

## TRANSACTIONS COMPLAINED OF IN-THE PRINCIPAL ACTION

The complaint alleges that the 1961 Prospectus was false and misleading in violation of § 17(a) of the Securities Act of 1933, § 10(b) of the Securities Exchange Act of 1934, Rule 10b–5 thereunder, and various sections of the General Business Law of New York, and in violation of the common law. Plaintiff seeks for herself and her class rescission of her purchase of Bessemer units and compensatory, punitive and exemplary damages.

It is claimed that statements contained in the Prospectus led the plaintiff and other investors to believe that the purchase of a unit would yield during the first year of ownership $650 as a cash distribution for each $5,000 participation; that the cash distribution would increase annually; that the real estate would be under professional management of experts in the motel field; that the geographical locality of the area had extensive growth potential; that to the injury of the members of the class, none of these representations was realized,

and that defendants well knew they would not be. There are further allegations of omission of information which it is claimed the Prospectus should have contained. In brief, this is a classic case in which, the business venture having gone sour, the investors claim fraud and seek redress from the original promoters.

## TRANSACTIONS SOUGHT TO BE ENJOINED

The Holiday Inn Motel is Bessemer's chief asset. As a result of its operating at a loss, the general partners sought a buyer for the motel. By letter dated August 27, 1970, Yablok as a general partner wrote to all partners informing them that a buyer, not identified, was ready to purchase the motel despite the claimed adverse effect that the construction of a new expressway five miles from the present site would have on the business of the motel. The two-page printed letter advised that the sale was conditioned on the willingness of Holiday Inn Corporation to franchise to the buyer a new motel near the new expressway and on the further condition that the management of the existing motel and Yablok sublease the existing motel and the proposed new motel. The financial implications of the sale and its impact on the partnership was set forth in some detail. In response to the letter, 78.41 percent of the partners gave their written approval (the consent of 65 percent being required by the terms of the partnership agreement). The number who consented represented 78.79 percent of the ownership of the partnership and 96.5 percent of the limited partners who responded to the letter. The plaintiff seeks to enjoin the sale on the ground that the letter of notification sets forth the terms of the proposed transaction in summary fashion only, fails to name the prospective purchaser or to describe his financial stability, provides that the lease would take over miscellaneous assets not included in the sale, thereby excluding the limited partners from benefit as to those assets,

cuts the limited partners out of future operation of the existing motel and the new motel, and in general benefits the general partners to the detriment of the members of the class. Plaintiff alleges that she cannot locate Yablok, who has not been served, that the real estate is the major assets of the defendants, and that her claim for punitive and exemplary damages would be "difficult if not impossible to collect" if the motel were sold. On these grounds she seeks to restrain the sale or, in the alternative, an order that the sale be enjoined unless the consent of all limited partners who were original holders is secured, or that a fund be created out of the distributable assets of the sale to secure the rights of all original holders of limited partnership interests.

At the time the motions were heard, the documents required to transfer title had already been placed in escrow, in accordance with the customs and procedure prevalent in California, with the City National Bank of Beverly Hills, California. It was unclear whether the sale had actually been completed or not. The transaction was consummated on November 12, 1970, in accordance with the terms of the contract of sale. Even had the sale not become final, there would have been serious questions as to this court's jurisdiction to enjoin its completion, since service has not been made on all of the general partners, but in any event, in view of the consummation of the transaction, the prayer for an injunction against the sale is moot and I deal solely with the application for alternative injunctive relief.

Nadelson and Nelson assert in opposition to the motion that the letter of August 27th was accurate, in detail, that the purchaser was unidentified because, as of the date of the letter, it had not yet been determined by what entity the assets were to be purchased; that the transaction was negotiated at arm's length, that the miscellaneous assets to be turned over to the lessee consisted of insignificant items such as some linen and tableware, and that the interests of the limited partners will be adequately secured by a purchase money second mortgage on the asset itself.

In answer to the claim that Yablok and other defendants would reap benefits from the lease-back arrangement to the exclusion of the limited partners, the defendants assert that since the buyers were willing to buy the motel only on condition that they would obtain another Holiday Inn franchise and that the Bessemer partnership agreement specifically precluded the partnership from purchasing additional property, the only way a sale could be made was for Yablok and associates as partners in Bessemer to meet the condition. It is claimed that, far from securing a benefit, Yablok is assuming a risk in this regard, since he must arrange financing of $200,000 and that "plaintiffs' alleged benefit to Mr. Yablok is in fact his risk, with benefit to the limited partners." (Affidavit of Robert Stephan Cohen sworn to October 28, 1970).

## DISCUSSION

"A motion for a preliminary injunction is addressed to the sound discretion of the Court. Ideal Toy Corp. v. Fab-Lu Ltd., 360 F.2d 1021 (2d Cir. 1966), 7 Moore's Federal Practice ¶ 65.–04 at 1625 (2d ed. 1966). The purpose of such an injunction is to maintain the status quo pending a final determination of the merits. Unicon Management Corp. v. Koppers Co., 366 F.2d 199, 204 (2d Cir. 1966). The determination of such a motion requires the Court to weigh the movants' likelihood of success in the ultimate action and the possible irreparable injury if the motion is not granted against the possibility of injury to other parties if the motion is granted. Dino de Laurentiis Cinematografica, S.p.A v. D–150, Inc., 366 F.2d 373 (2d Cir. 1966). The burden on the movants is 'less where the balance of hardships tips decidedly toward the party requesting the temporary relief' and if they raise serious and substan-

tial questions going to the merits which present a 'fair ground for litigation,' temporary relief may be issued to preserve the status quo. Checker Motors Corp. v. Chrysler Corp. and Chrysler Motors Corp., 405 F.2d 319 (2d Cir. 1969)." Lerman v. Tenney, et al., 295 F.Supp. 780, 782 (1969).

In *Lerman*, the facts were strikingly similar to those in the instant case. Plaintiffs were owners of partnership interests in a limited partnership who moved on behalf of a class of limited partners for a preliminary injunction restraining the general partners from distributing the proceeds of the sale of the chief asset of the partnership. There, as here, "[t]he essence of the complaint is that the prospectus, as a whole, gave the false impression that the venture involved little risk with the likelihood of high return on investment. This rosy impression was allegedly conveyed by the inclusion in the prospectus of favorable estimates of future operations, income and anticipated distributions." There, not surprisingly, as here, clouds darkened the "rosy impression," profits fell off, and suit ensued. Although Judge Mansfield held that the *Lerman* plaintiffs had raised "sufficiently substantial and serious questions going to the merits to present ample grounds for litigation," nevertheless, considering the balance of hardships involved, he found that the requested injunction against the distribution of assets was too drastic a remedy, particularly when, as here, a very substantial percentage of the limited partners had consented to the sale in the expectation that the proceeds would be distributed to them.

In *Lerman*, on the basis of uncontested affidavits of plaintiffs that the general partners could not respond in money damages to a substantial judgment, Judge Mansfield did authorize the establishment of a fund equal to 10 percent of the distributable proceeds. Plaintiff here, whose counsel acted as counsel to the plaintiffs in *Lerman*, urges that a similar procedure be followed in this case, but the predicate for such action does not exist since there is no evidence before me that the general partners in this case could not respond in money damages, nor has the plaintiff demonstrated a probability that she will succeed in securing punitive or exemplary damages at trial. Accordingly the motion for a preliminary injunction is denied.

### THE MOTION FOR DETERMINATION OF A CLASS ACTION

In support of her motion for determination under Rule 23(a), F.R.Civ. P., plaintiff has alleged, as required by the rule, that the proposed class is of a size which would render joinder impracticable, that common questions of law and fact apply to each member of the proposed class because of their common reliance on the same prospectus, that she is represented by skilled counsel in this field of litigation and will adequately protect the interests of the class, that she knows of no other actions pending in relation to the subject matter or other persons with an interest in controlling the litigation. Defendants oppose the motion on the ground that the plaintiff's allegations are not adequately supported and the class is not defined with sufficient specificity.

The utility of the class action procedure in litigation involving fraud in the sale of securities has been constantly and regularly recognized. Green v. Wolf Corporation, 406 F.2d 291 (2d Cir. 1968); Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968). *Eisen* states:

> " * * * that the new rule should be given a liberal rather than a restrictive interpretation"

and *Green* instructs that

> " * * * if there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments so require." (Quoted from Esplin v. Hirshi, 402 F.2d 94 (10th Cir. 1968)).

Here the class would consist of a relatively large number of persons presenting relatively small claims. This is precisely what the court had in mind in Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y.1968), in observing that "the usefulness of the respective action as a device for the aggregation of small claims is persuasive of the necessity of a liberal construction of * * * Rule 23." As the Advisory Committee on Federal Procedure stated in its 1966 notes for subdivision (b) (3) of Rule 23:

> "The Court is required to find as a condition of holding that a class action may be maintained under this subdivision, that the questions common to the class predominate over the question affecting individual members. It is only where this predominance exists that economies can be achieved by means of the class action device. In this view, a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class."

Guided by these considerations, I find that plaintiff has satisfied the requirements of Rule 23. The class consists of at least 180 persons, all of whom would be affected by a common fraud; the questions of law and fact, except for damages, would be common to the class; plaintiff's claims are typical, and the record establishes that she will fairly and adequately represent the interests of the class. The prosecution of separate actions by class members would create the risk of inconsistent or varying adjudications which Rule 23(b) (1) (A) is intended to obviate.

There remains for determination the definition of the class and provisions for notice to its members. These factors may be finalized in proposed orders which the parties shall submit. Plaintiff suggests that the class be defined as consisting of all individuals who purchased partnership securities units in Bessemer pursuant to a selling document entitled "Prospectus" dated April 12, 1961. While this definition might be further refined, it appears basically appropriate. Since the class consists of only approximately 180 persons, the order to be entered shall include provisions for personal service by certified or registered mail. The notice shall include the material required by Rule 23(c) (2) and shall clearly and adequately describe the nature of the action. The notice shall be prepared and mailed at the expense of the plaintiff, provided that, in the event the class shall prevail at trial on the merits of the class issues (which presumably will not include the determination of damages), the cost of such preparation and mailing shall be taxed to the defendants.

#### "MOTION TO COMPEL AN AMENDED COMPLAINT"

Defendants have moved under Rule 12(e), Federal Rules of Civil Procedure, for an order "requiring plaintiffs to submit an amended complaint." Since no such relief can be granted under Federal Rule 12, I construe the motion to be for the relief authorized under the rule, that is, a more definite statement. The rule provides that such a statement may be required where the defendant cannot frame a responsive pleading because of the vague or ambiguous nature of the complaint.

I have studied the complaint, and, although it is true that it contains a great many stock allegations common to the nature of the action here, nevertheless it is more than sufficiently clear to permit any defendant to answer. This view is fortified by the fact that two of the defendants, Martin Rosen and Holiday Inns, Inc., have already filed answers to the complaint.

As Judge McLean stated in Gann v. Bernzomatic, 262 F.Supp. 301, 304 (S.D.N.Y.1966):

> "Details of the claim of each plaintiff are readily obtainable by interrogatories or depositions. The clear trend

of the recent decisions is to deny motions for a more definite statement unless the complaint is so excessively vague and ambiguous as to prejudice defendant seriously in attempting to answer it."

Whatever may be the faults of the instant complaint, it is sufficiently detailed to permit defendants to answer without difficulty or prejudice.

For the reasons stated above plaintiff's motion for a preliminary injunction is denied, the motion to designate the action as a class action is granted upon the terms set forth above, and defendants' motion under Rule 12 of the Federal Rules of Civil Procedure is denied.

Pursuant to Rule 52(a), this opinion constitutes the court's findings of fact and conclusions of law.

Submit order.