### COMMONWEALTH
v.
### UNITED RESOURCES et al.

No. 78-4193

Superior Court Department
Trial Court of the
Commonwealth of Massachusetts

September 15, 1980

Counsel of Record
Richard A. Gross, Assistant Attorney General, Robert D. Cohan, Plaintiff
Samuel Lazarus, Morris Tobin, Guy Bailey, Jesse Jones, Defendant

## MEMORANDUM OF DECISION ON PRE-TRIAL MOTIONS

Certain of the defendants in this case move to dismiss upon the ground that this court cannot properly exercise personal jurisdiction over them, Mass. R. Civ. P. 12(b)(2), that the complaint fails to state a claim, Mass. R. Civ. P. 12 (b)(6), and that, in any event, the action is time barred. On its part, the Commonwealth seeks a preliminary injunction to prevent the defendant Land & Leisure, Inc. ("Land & Leisure") from distributing any money received from the Division of Florida Land Sales and Condominiums.

The defendants involved originally moved to dismiss, supporting their motion with a variety of affidavits, thus converting it into a motion for summary judgment upon these two defenses. Mass. R. Civ. P. 12(b). The Commonwealth claimed it could not meet the defense of lack of personal jurisdiction without further discovery, Mass. R. Civ. P. 56(f), and it was afforded the opportunity either to propound interrogatories to the defendants or to travel to Florida (where all the defendants reside or have

their principal place of business) to depose them. The Commonwealth proceeded by way of interrogatories and the defendants have answered certain of these interrogatories and objected to others.

For the purposes of dealing with the pending motions, the facts have been gleaned from the affidavits supporting the original complaint and the Commonwealth's motion for a preliminary injunction, as well as the counter affidavits filed by the defendants and their answers to interrogatories.

It appears without substantial dispute that, in 1970 and 1971, Land & Leisure, acting through agents in Massachusetts and by means of advertisements in a Massachusetts newspaper, sold Florida real estate to certain Massachusetts consumers. Land & Leisure concedes that its contacts with Massachusetts during the course of these sales are sufficient to confer upon this court personal jurisdiction over it. It is alleged that, on or about the time of the sales, certain warranties were made that improvements to the Florida real estate sold, i.e., connecting roads, sewage, and the like, would be completed by the developer, Land & Leisure, within the next five to seven years. These allegations are strongly disputed by the defendants who make references to certain HUD land registration forms which, they contend, were signed by the Massachusetts consumers and make clear that Land & Leisure had no such obligation to develop the land.

In 1972, the defendant United Resources, Inc. ("United Resources") assumed control of Land & Leisure. Over eighty per cent of the shares of United Resources are owned by the defendant Guy B. Bailey ("Guy"), his wife Areca Stone Bailey ("Areca"), their daughter Charlotte Babcock ("Charlotte"), and their son Guy Bailey, Jr. Guy, Areca, and Charlotte were, at the time of the acquisition of Land & Leisure by United Resources, officers and directors of United Resources and,

after the acquisition, they became officers and directors of Land & Leisure as well. The defendant Brian Boyett became comptroller and vice-president of United Resources in 1973 and assumed similar duties for Land & Leisure in 1975.

1. **Personal Jurisdiction.** Guy, Areca, Charlotte, Boyett, and United Resources all challenge the exercise of personal jurisdiction over them by this court. Mass. R. Civ. P. 12(b)(2). They argue that, individually and collectively, they had nothing to do with Land & Leisure at the time it made the Florida land sales to Massachusetts consumers, and that the alleged breach of warranty—which, they contend, is not actionable even if it occurred (see **infra** at pp. 7-10)—took place only in Florida without any such connections to Massachusetts as would subject these defendants to the personal jurisdiction of this court.

Assuming for the moment that Land & Leisure made warranties to Massachusetts consumers at the time of the Florida land sales, that these warranties have been breached, and that such breach is actionable under G.L. c. 93A, sec. 2, then United Resources is subject to the personal jurisdiction of this court. This result follows from the significant interpenetration of corporate officers of Land & Leisure by officers of United Resources, the evidence of total control of the operation of Land & Leisure by United Resources, and the evidence that the corporate organization adopted here resulted, in part, from a plan to avoid making good on the obligations of Land & Leisure. **Commonwealth v. Beneficial Finance Co.,** 360 Mass. 188, 290 (1971) (Speigel, J.), cert. denied **sub nom. Farrell v. Massachusetts,** 407 U.S. 910 (1972). **My Bread Baking Co. v. Cumberland Farms,** 353 Mass. 614, 618-619, 621 (1968) (Cutter, J.). See **Henry F. Mitchell Co. v. Fitzgerald,** 353 Mass. 318, 322 (1967) (Wilkins, C.J.); **New England Theatres Co. v. Olympia Theatres,** 287 Mass. 485, 493; **Hallett v.**

**Moore,** 282 Mass. 380, 399 (Rugg, C.J.). See also **National Labor Relations Board v. Deena Artware, Inc.,** 361 U.S. 398, 403 (1960); **Joseph R. Foard Co. v. State of Maryland,** 219 F. 827, 829 (4th Cir. 1914). In substance, there is sufficient evidence before this court to warrant further judicial inquiry concerning whether Land & Leisure has failed to fully perform its contracts with Massachusetts consumers. The contacts of Land & Leisure with Massachusetts are admitted to be sufficient to confer jurisdiction over it upon this court. Indeed, Land & Leisure could hardly deny jurisdiction. **Carlson Corp. v. University of Vermont,** Mass. Adv. Sh. (1980) 659, 662. The ruling that United Resources is an alter ego for Land & Leisure subjects United Resources to the jurisdiction of this court as well, even if United Resources had nothing whatsoever to do with the commencement of the contractual relation between Land & Leisure and Massachusetts consumers. I rule that once United Resources became so involved with Land & Leisure to become its alter ego, it had the same contractual obligations, and could be subjected to the same consumer claims, as could Land & Leisure albeit it was Land & Leisure alone which had first entered into the on-going contractual relationship. The logic of this approach is compelling. A contrary rule would, for example, permit the victor in a foreign corporate takeover to avoid any obligations to Massachusetts consumers undertaken by the vanquished corporation through the simple expedient of dissolving that corporation after having reaped the profit of its Massachusetts sales.

The situation as respects the individual defendants is somewhat more complex. In their view they are nothing more than shareholders of a shareholder of the alleged wrongdoer, Land & Leisure. In the view of the Commonwealth, these individuals, especially Guy, are behind the entire allegedly deceptive land sale scheme.

While it is true that, notwithstanding the use of the corporate form, individual liability will attach "where the individual operated or controlled the corporation, and had knowledge of unlawful acts". **Nader v. Citron,** 372 Mass. 96, 103 (1977), it would appear that if Guy, Areca, Charlotte, and Boyett did no more than deliberately cause United Resources and Land & Leisure to fail to carry out its warranty obligations, none of them would be subject to the jurisdiction of Massachusetts courts since such an omission to act occurred only in Florida, had no direct contact with Massachusetts, and there is no evidence that any individual defendant purposely availed him- or herself of the privilege of conducting activities in Massachusetts, thus invoking the benefits and protections of its laws. **Hansen v. Denckla,** 357 U.S. 235, 253 (1958), citing **International Shoe Co. v. Washington,** 326 U.S. 310, 319 (1945). Nor does such an omission to act in Florida fit within the Massachusetts "long arm" statute since there is, at present, no evidence that any of these individual defendants "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth". G.L. c. 223A, sec. 3(d). On the other hand, if it could be shown that these individual defendants were behind the original solicitation of business by Land & Leisure in 1970 and 1971, they would be subject to jurisdiction pursuant to G.L. c. 223A, sec. 3(a) and (c). **Murphy v. Erwin-Wasey, Inc.,** 460 F. 2d 661, 664 (1st Cir. 1972). Unfortunately, due to the incomplete and often evasive answers of the defendants to the jurisdictional interrogatories of the Commonwealth, this issue cannot now be resolved. The objections of the individual defendants to answering these interrogatories are overruled and the individual defendants are ordered to answer and further answer jurisdictional interrogatories of

the Commonwealth in accordance with its motion which is allowed in its entirety, such answers to be filed not later than forty-five days after the date of the entry of this memorandum of decision. Moreover, the motions of the individual defendants to dismiss on jurisdictional grounds are each denied without prejudice to their moving for a preliminary hearing on the question of personal jurisdiction pursuant to Mass. R. Civ. P. 12(d) once they have made complete answer to the Commonwealth's jurisdictional interrogatories.

2. **Statement of the Claim.** The defendants assert that the complaint of the Commonwealth fails to state a claim upon which relief can be granted, Mass. R. Civ. P. 12(b)(6), insofar as it alleges a violation of Section VII(B) of the Rules and Regulations promulgated by the Attorney General pursuant to c. 93A, sec. 2(c), 940 Code Mass. Reg. 3.08(2).[1] The defendants correctly point out that the Supreme Judicial Court has expressly reserved judgment upon the validity of this particular regulation, **Slaney v. Westwood Auto, Inc.,** 366 Mass. 688, 702 n.17, and they now assert that this regulation, as applied in the circumstances of this case, is invalid.

Treating the defendants' motion as one to dismiss and not as a motion for summary judgment, I need not reach this issue. If the allegations of the Commonwealth's complaint are taken as true, the defendants, acting with full knowledge, entered into consumer contracts for the sale of Florida real estate to Massachusetts customers never intending to fulfill the warranties concerning road and utility installation which were an integral part of the consumer transaction. Such conduct misrepresents material facts, is a violation of 940 Code Mass. Reg. 3.05, and is also deceptive in that it "could

reasonably be found to have caused a person to act differently from the way he otherwise would have acted". See 940 Code Mass. Reg. 3.16(2), a regulation upheld in **Lowell Gas Co. v. Attorney Gen.,** Mass. Adv. Sh. (1979) 49, 65. see also **Purity Supreme, Inc. v. Attorney General,** Mass. Adv. Sh. (1980) 1349, 1362-1365; **Mongeau v. Boutelle,** Mass. App. Ct. Adv. Sh. (1980) 1369, 1371. Thus, were this only a motion to dismiss for failure to state a claim, the motion would necessarily have to be denied.

The motion is, however, supported by substantial affidavits and I choose to treat it as a motion for summary judgment pursuant to Mass. R. Civ. P. 12(b). Viewed in this light, there is, as yet, no sufficient evidence from which it can be concluded that United Resources and the individual defendants so intimately participated in the original land sales as to become liable for misrepresentations of material fact. However, since these defendants have failed to fully respond to the interrogatories directed to them, it would be improper to enter summary judgment in their favor on this issue at this juncture. However, to prevent repetitious motions for summary judgment on this issue to no effect, I now conclude that even if Land & Leisure and United Resources did nothing more than breach the contract of the former with Massachusetts consumers in failing to fulfill warranties made therein, they may be held liable for engaging in unfair and deceptive practices.

While it is true that not every breach of contract gives rise to a claim under chapter 93A, **Whitinsville Plaza, Inc. v. Kotseas,** Mass. Adv. Sh. (1979) 1262, 1282, **Mechanics Nat'l Bank v. Killeen,** Mass. Adv. Sh. (1979) 129, 139, **Gopen v. American Supply Co., Inc.,** Mass. App. Ct. Adv. Sh. (1980) 1497, 1503,[2] consumer warranty claims are deserving of the special protection afforded by the Attorney General's regulation. Warranties are an integral part of a wide

[1]This regulation provides that "it shall be an unfair and deceptive act or practice to fail to perform or to fulfill any promises or obligations arising under a warranty."

array of common consumer transactions; they are the subject of the most sophisticated advertising campaigns designed to attract a consumer and then tie him to a particular product over the course of a series of sales. It is a most abrasive sort of deception to find, for example, that a company which had agreed to repair a product for "a lifetime of service" has breached that obligation or purports to make good on its warranty simply by giving the consumer another lemon in the place of the one originally purchased. I conclude, therefore, that the regulation of the Attorney General defining breach of warranty in a consumer transaction as an unfair and deceptive practice "bears a reasonable relation to the goal of consumer protection", **Grocery Mfrs. of America, Inc. v. Department of Pub. Health,** Mass. Adv. Sh. (1979) 2291, 2303, **Purity Supreme, Inc. v. Attorney Gen.,** Mass. Adv. Sh. (1980) 1349, 1363, and that the regulation is therefore validly applied to the two corporate defendants in this case even if they did no more than determine, long after the initial transaction had been consummated, to breach the warranties made earlier.[3] The regulation of the Attorney General appearing in 940 Code Mass.

[2]Note that each of the cited cases involves disputes among businessmen knowledgeable of commercial practices even if not of equal bargaining power. None of these cases involves a straightforward consumer contract.

[3]One can conceive of situations where this regulation might cut too harshly against a businessman who had no economic choice but to breach warranties in consumer contracts. For instance, a company's bankruptcy or total liquidation (as opposed to its sale to another going concern) could well involve the breach of consumer warranties on products still in use without the claim that such breach was in any way unfair or deceptive of the consumer. One imagines that consumers must necessarily be charged with the risk that the companies with which they do business may some day cease to exist. Prior to total corporate dissolution, however, a regulation such as the one in question prioritizes a company's duties and tends to ensure that, in making necessarily difficult economic decisions, the interests of consumers are not unduly subordinated to the interests of other creditors.

Reg. 3.08(2) is thus validly applied in the circumstances of this case.

3. **Timeliness of the Claim.** Actions for violations of laws intended for consumer protection have a four-year statute of limitations. G.L. c. 260, sec. 5A. This action was commenced on August 4, 1978. Therefore, in order to be timely, it must have accrued not earlier than August 4, 1974. "(A) cause of action in contract accrues at the time of the breach . . . and . . . a cause of action in tort accrues at the time of the injury to the plaintiff . . . However, there are situations in which a cause of action in either contract or tort which is based on an inherently unknowable wrong may not accrue until the person injured knows or in the exercise of reasonable diligence should know the facts giving rise to the cause of action." **Frank Cooke, Inc. v. Hurwitz,** Mass. App. Ct. Adv. Sh. (1980) 1197, 1203-1204. The Commonwealth argues that the action did not accrue until it was clear that the promised road and utility amenities would not be constructed, thus breaching a warranty which was part of the transaction. Further, the Commonwealth submits that the Massachusetts consumers who purchased the Florida land did not in fact know of such breach until some time in 1977 and could not reasonably have been expected to know of any such breach in Florida prior to that time. The Commonwealth's own affidavits, however, submitted in support of equitable relief, indicate that at least some of the consumers on whose behalf it is presently proceeding must have understood that Land & Leisure considered itself under no obligation to supply or construct the road and utility amenities at the time they received a letter to that effect from Land & Leisure dated June 27, 1974. As to these consumers, then, this action is not timely, whatever its theory. Since the record is not clear, however, that all the consumers upon whose behalf the Commonwealth proceeds had the requisite knowledge, the defendants'

motion to dismiss (treated as a motion for summary judgment) must be denied at this stage without prejudice to its renewal upon proper affidavits demonstrating that the Massachusetts consumers all had knowledge of the position of Land & Leisure more than four years before the commencement of the instant action.

**4. Preliminary Injunction.** It has been represented to the court that Florida law requires a land developer to deposit certain funds with the Division of Florida Land Sales. On May 29, 1979, the Attorney General of Massachusetts filed a protest and complaint with the Division of Florida Land Sales requesting that the funds it held with respect to the land being developed by Land & Leisure be applied for the benefit of the purchasers of such land and not returned to Land & Leisure. On April 4, 1980, the Division of Florida Land Sales ordered the release of these funds to the law firm representing Land & Leisure, allegedly without notice to the Massachusetts Attorney General or an opportunity for hearing. In light of these allegations, I conclude as a preliminary matter that the Attorney General is free to relitigate in this forum issues which the determination of the Division of Florida Land Sales might otherwise have precluded him from raising here. Restatement (Second) of Judgments sec. 131(2)(a) and (b) (Tent. Draft No. 7, April 11, 1980). This court has temporarily restrained further disbursement of these funds pending this decision.

The Commonwealth argues that the standard for granting it a preliminary injunction in a case brought by it pursuant to G.L. c. 93A, is found in sec. 4 thereof and requires only that the Commonwealth demonstrate "a justifiable basis for believing, derived from reasonable inquiry or other credible information, that such a state of facts probably existed as reasonably would lead (it) to believe that the defendants were engaged in violations of the statute". **Securities Exchange Commission v. General Refractories Co.,** 400 F. Supp. 1248, 1254 (D.D.C. 1975) and show that preliminary relief is in the public interest. **Commonwealth v. Mass. Rentals, Inc.** (Housing Court of the City of Boston, No. 03499, June 19, 1975).

I disagree, believing that G.L. c. 93A, sec. 4 defines the circumstances under which the Attorney General may seek equitable relief but that traditional equitable standards govern the grant of such relief. **Commonwealth v. DeCotis,** 366 Mass. 234, 245 (1974). There the Supreme Judicial Court stated, "we believe that, as originally enacted, G.L. c. 93A granted full authority to the courts to use their **traditional equity power** to fashion decrees to remedy the wrong complained of and to make the decree effective . . . We view the 1969 amendment to sec. 4 of G.L. c. 93A as clarifying the authority of the court, but not increasing it." **Ibid.** (emphasis supplied.)[4]

Following traditional principles then, I consider whether to grant a preliminary injunction in light of the standards most recently described in **Packaging Industries Group, Inc. v. Cheney,** Mass. Adv. Sh. (1980) 1189, 1197.

The Commonwealth claims that, if the funds presently held are disbursed to Land & Leisure, it will be irreparably harmed. "In the context of a preliminary injunction the only rights which may be irreparably lost are those not capable of vindication by a final judgment, rendered either at law or in equity." **Id.** at 1197 at n.11. Normally, equitable orders which interfere with the payment of funds in a routine commercial context are not favored. **Interco, Inc. v. The First National Bank**

---

[4] If this conclusion be wrong, it is appropriate to state, in order to avoid further proceedings, that I am satisfied that the Commonwealth has demonstrated a reasonable likelihood that Land & Leisure has, at least at some time in the past, violated G.L. c. 93A, sec. 2 and that the interest of Massachusetts consumers favors granting preliminary equitable relief.

**of Boston,** 560 F. 2d 480 (1st Cir. 1977). The Commonwealth here seeks no order averting the threat of imminent harm to its citizens or itself; rather, it simply fears that its chances of actual recovery are diminished should these funds be paid over to Land & Leisure. In short, the Commonwealth is here seeking pre-judgment security, a matter normally addressed by trustee process and attachment. Indeed, were Land & Leisure present in Massachusetts and its accounts and assets subject to such process, I would find an adequate remedy at law and decline to issue an injunction since, to do so, frequently interferes with others having commercial dealings with the enjoined defendant. In the present circumstances, however, Land & Leisure, a Florida corporation with no assets in Massachusetts, is not subject to the pre-judgment remedies available under Massachusetts law. Moreover, I am satisfied that the Commonwealth has here made an affirmative showing that Land & Leisure will be unable to respond in monetary damages should the funds its attorneys presently hold be disbursed. Such a situation does expose the Commonwealth to the risk of irreparable harm. **Sultan v. Bessemer-Birmingham Motel Associates,** 322 F. Supp. 86 (S.D.N.Y. 1970). See **Atlantic Wool Combing Co. v. Fibre Corp.,** 306 F. Supp. 69 (D.R.I. 1969). Granting an injunction, on the other hand, subjects Land & Leisure and others to significant harm since it is undisputed that on March 27, 1974, Land & Leisure, for valuable consideration, had assigned these very funds to Walter E. Heller & Company of Florida. There is nothing before me to suggest that this assignment is fraudulent or that the parties involved were acting in collusion. Rather, it appears that the assignment was made in return for a loan. In these circumstances, what matters "is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party's chance of success on the merits. Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue." **Packaging Industries Group, Inc. v. Cheney,** Mass. Adv. Sh. (1980) 1189, 1197. After careful consideration, on the basis of the record before me, I conclude that the Commonwealth's ultimate chance of success on the merits is not great. Whatever the strength of its underlying cause of action, the statute of limitations defense advanced by Land & Leisure seems most significant, especially in view of the ample notice that at least some of the Massachusetts consumers upon whose behalf the Commonwealth proceeds had more than four years before the commencement of this action. Since the chance of ultimate success by the Commonwealth is doubtful and the actual injury to Land & Leisure—and an apparently innocent third party—substantial, I decline to enter a preliminary injunction.

As this matter is complex and the rights involved substantial, the preliminary injunction presently in effect will not be vacated until one week after the date of this order so that the Commonwealth may have an opportunity to seek appellate review.

5. **Summary.** In view of the foregoing, the objections of the various defendants to the interrogatories propounded by the Commonwealth are overruled and the Commonwealth's motion to compel further discovery is allowed, the motions of the various defendants to dismiss are treated as motions for summary judgment and are denied, and the preliminary injunction heretofore entered is vacated at 5:00 p.m. on the seventh day following the date of this order.

By the court,
**William G. Young**
**Justice of the Superior Court**